IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SNAPO TOYS, LLC | : | |
| Plaintiff | : | Civil Action No. |
| | : | |
| v. | : | |
| | : | |
| CAROL SORENSON | : | |
| Defendant | : | |

**CIVIL ACTION COMPLAINT**

The Plaintiff, Snapo Toys, LLC (hereinafter "Plaintiff" or "Snapo Toys"), by and through its undersigned counsel, brings this civil matter against Carol Sorenson (hereinafter "Defendant"), and hereby avers as follows:

**INTRODUCTION**

1. Plaintiff brings this action to remedy Defendant's continuing course of conduct that has prevented Plaintiff from exercising its exclusive licensed rights, disregarded binding arbitration awards, withheld access to core business assets, and jeopardized existing and prospective commercial relationships. Defendant's conduct constitutes breach of the Settlement and License Agreement, tortious interference, conversion, and related violations. Unless enjoined and declared unlawful, Defendant's continued refusal to cooperate threatens immediate and potentially catastrophic harm to Plaintiff's business, including the loss of a material relationship with a major national retailer.

**JURISDICTION AND VENUE**

2. Jurisdiction is founded upon 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, and there exists diversity of citizenship between Plaintiff and Defendant. Further, this Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because Count VI arises under Section

43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The Court has supplemental jurisdiction over Plaintiff's related state law claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because as set forth herein, a substantial part of the events and injuries giving rise to these claims occurred in this District, where Plaintiff operates and where Defendant's conduct has been directed and felt. To the extent Defendant is not a resident of the United States, venue is also proper under 28 U.S.C. § 1391(c)(3). Defendant is subject to personal jurisdiction because she entered into continuing obligations with a Pennsylvania company and purposefully directed the conduct alleged herein toward Plaintiff in Pennsylvania.

## PARTIES

4. Snapo Toys is a Pennsylvania limited liability company with its principal place of business located at 105 W.9th Street, Shoemakersville, PA 19555.

5. Snapo Toys is owned and operated by Ms. Tara Kennedy-Kline ("Ms. Kennedy-Kline").

6. Ms. Kennedy-Kline is an adult individual and managing member of Snapo Toys whose address is 105 W.9th Street, Shoemakersville, PA 19555.

7. Defendant is an adult individual whose primary address is PO Box 31096 Grand Cayman, Cayman Islands, KYI-1205.

## FACTUAL BACKGROUND

8. Vision Plastics Manufacturing ("Vision") is a California corporation with its principal place of business located at 9888 Waples Street Suite B, San Diego, CA 92121.

9. Vision was incorporated in California on May 22, 2012 by Soren Christian Sorenson, Defendant's late husband, for the purpose of manufacturing Snapo branded toy products.

10. Vision was capitalized through a partnership agreement dated May 10, 2012 and was later amended to add Robert Miller in an Agreement Among Shareholders dated November 4, 2014. A copy of the Shareholder Agreement is attached as Exhibit "A".

11. Pursuant to Section 8 of the Shareholder Agreement, Mr. Sorenson granted an exclusive license for the use of patents and technologies which he owned to Vision for use in North America only.

12. Mr. Sorenson granted Vision a license to use the Snapo trademark under U.S. Trademark Registration No. 4,419,358.

13. The understanding of the signatory parties to the Shareholder Agreement was that the exclusive patent license was irrevocable and that the patent license would transfer with any future sale of the company.

14. After Mr. Sorenson's death in 2017, Defendant inherited a 27.666% share interest in Vision.

15. Three other minority shareholders currently own the remainder of Vision: Robert Miller, the Chief Financial Officer of Vision (17%), Stephen Rhodes (27.666%), and Jon Kemmer, the Secretary of Vision (27.666%).

16. After Mr. Sorenson's death, Vision went into decline and in July 2018, all shareholders met for an emergency meeting where they consented to the sale of the company and waived any right to purchase stock or object to any form of sale.

17. Mr. Miller was given authority to take whatever actions necessary to find a buyer and negotiate all terms, including patent terms, of the sale of Vision.

18. In December 2018, Mr. Miller contacted Ms. Kennedy-Kline to see if she would be interested in acquiring Vision, including all of its inventory and equipment in order to take over the manufacture and sale of Snapo products.

19. Mr. Miller informed Ms. Kennedy-Kline that all the shareholders of Vision, including Defendant, desired to sell to someone who would carry on the business of making and selling Snapo products.

20. Unbeknownst to Ms. Kennedy-Kline, Defendant demanded from Vision separate detailed offers for both the purchase of the equipment and the purchase of the licensing patents despite Defendant lacking any authority to demand or dictate any terms or conditions of the potential sale.

21. Ms. Kennedy-Kline entered into negotiations with Mr. Miller to discuss an acquisition of Snapo.

22. In December of 2018, Ms. Kennedy-Kline attended a virtual meeting with all shareholders, and the Defendant as well as several principles of Vision Plastics where the terms of the sale including all assets as well as IP were discussed. The Defendant actively participated in that conversation and expressed understanding of and agreement with the proposed terms of the sale.

23. On February 8, 2019, a formal letter of intent was prepared setting forth the pricing and terms for the acquisition of the assets of Vision as well as the terms of the licensing of the Snapo Patents.

24. On February 9, 2019, Ms. Kennedy-Kline and her husband traveled to San Diego to meet with the Vision shareholders to inspect the facility and its assets, including its inventory and equipment.

25. During that visit, Ms. Kennedy-Kline was again assured by Mr. Miller that Defendant was willing to proceed with a patent license based on the same terms as the Shareholder Agreement.

26. On February 12, 2019, Ms. Kennedy-Kline contacted Mr. Miller to clarify that Ms. Kennedy-Kline must have the license rights to the patents or she would not follow through with the acquisition.

27. After being assured by Mr. Miller that Defendant was in full agreement with the licensing terms, Ms. Kennedy-Kline formed Snapo Toys, LLC on February 12, 2019.

28. Mr. Miller signed the Asset Purchase Agreement on behalf of Vision and Plaintiff signed the Agreement in her capacity as Manager of Snapo Toys, LLC. A copy of the Agreement of Sale is attached as Exhibit "B".

29. The Asset Purchase Agreement sets forth in detail all of the equipment, inventory, customer lists, vendor lists, as well as all rights and interest to Snapo's domain name and social media accounts to be conveyed to Plaintiff.

30. The Asset Purchase Agreement also provides that "any and all know-how, technology and intellectual property relating to Snapo products, including all copyrights, trademarks and the goodwill associated therewith" would become the property of Snapo Toys, LLC.

31. The Agreement further provided that any agreements between Mr. Sorenson and Defendant and Vision shall be transferred and made a part of the Asset Purchase Agreement.

32. Vision made full representations to Ms. Kennedy-Kline verbally as well as in the Asset Purchase Agreement that it had full authority to enter into the Agreement and to transfer all of the assets, intellectual property and website and social media rights to Snapo Toys, LLC.

33. The Agreement provided that Defendant was to receive a 5% royalty payment based upon the revenue generated by Snapo sales for 10 years which Ms. Kennedy-Kline also believed to be agreed upon by Defendant.

34. After the signing of the Asset Purchase Agreement, Ms. Kennedy-Kline prepared to have the assets from the warehouse in California moved to her warehouse outside of Reading, Pennsylvania at her own expense.

35. Vision assured Ms. Kennedy-Kline that the machines, molds, and other inventory were in working order and that the molds were capable of producing $3,000,000 in products per year.

36. Of the molds purchased by Plaintiff, two were non-functioning, one is not an actual mold, and only three of the molds produce more than one block at a time. The remaining molds only produce one block at a time.

37. The mold maker, Innovative Tool and Die ("ITD"), is owed a substantial past balance by Vision and will not produce or repair any molds until the balance is paid.

38. Defendant has instructed ITD not to communicate with Plaintiff.

39. On March 28, 2019, Ms. Kennedy-Kline's patent attorney contacted Defendant's attorney to try to negotiate a licensing agreement.

40. In May 2019, Defendant attempted to secure an injunction against Plaintiff in the United States District Court for the Southern District of California.

41. Defendant did not obtain the requested injunction. The litigation was thereafter resolved through a Settlement and License Agreement between Defendant and Plaintiff. A copy of the Settlement and License Agreement is attached as Exhibit "C".

42. The Settlement and License Agreement granted Plaintiff an exclusive license in the United States and worldwide "to develop, make, produce, market, sell, offer for sale, use, import, and distribute articles" covered by the licensed patents under the Snapo Brand.

43. Prior to the Asset Purchase Agreement, Vision allegedly had control and access to: (a) the domain name registration for snapo.com for which Vision was paying; (b) its website hosting account, for which Vision had been paying; (c) its Twitter social media account; (d) its Pinterest social media account; (e) its Instagram social media account; (f) its LinkedIn social media account; (g) its YouTube social media account; and (h) its Amazon Brand Registry Account.

44. Furthermore, Paragraph 37 of the Settlement and License Agreement requires Defendant to reasonably cooperate and assist Plaintiff with the delivery of assets of Vision to Plaintiff, including that Defendant must pay for and grant Plaintiff administrative access to: (a) the domain name registration snapo.com and any other domain name associated with the Snapo Brand; (b) website and email hosting account for snapo.com; and (c) social media accounts associated with the Snapo Brand such as Instagram, LinkedIn, YouTube, Grasshopper, Pinterest, and Twitter.

45. After the Asset Purchase Agreement and during the resulting disputes, Defendant assumed or retained control over the official Snapo domain, website, email infrastructure, and social media accounts, thereby preventing Plaintiff from fully accessing and administering those assets for business purposes.

46. Ms. Sorenson also retains control over the domain name registration which she has refused to transfer to Plaintiff.

47. Plaintiff and Ms. Kennedy-Kline have a contractual and arbitral rights to access and use the snapo.com domain, associated email services, and the official Snapo social media accounts, but Defendant continues to block or materially restrict that access.

48. Defendant's refusal to cooperate has prevented Plaintiff from controlling its official website and email systems, managing source-identifying brand channels, responding promptly to retailers and distributors, and obtaining reasonable confirmation of its authority as the exclusive licensee.

49. The Settlement and License Agreement resolved the parties' prior disputes and independently confirmed Defendant's obligation to cooperate with and facilitate delivery of Vision assets and to provide Plaintiff administrative access to the domain, hosting, email, and social media accounts identified in Paragraph 37 of the Settlement and License Agreement.

50. Defendant frequently fails to respond timely or at all to requests for access, cooperation, and confirmation of Plaintiff's licensed authority, further disrupting Plaintiff's business operations.

51. In 2019, Defendant initiated arbitration against Plaintiff asserting claims for breach of the Settlement and License Agreement.

52. At the hearing, Defendant acknowledged that Plaintiff had the right to use the snapo.com domain while she remained the owner.

53. Evidence at the hearing also established that the level of access necessary to build a current version of the snapo.com website and to have access and use of snapo.com email was not provided by Defendant and frustrated Plaintiff's attempts to promote, sell, and expand supply and sales, as required by the License.

54. On February 3, 2021 Arbitrator Sandra A. Jeskie entered a Partial Final Award denying Defendant's claim for breach of contract in its entirety and finding that Defendant failed to perform all of her obligations under the terms of the Settlement and License Agreement which frustrated Plaintiff's ability to comply with certain obligations. A copy of the Partial Final Award is attached as Exhibit "D".

55. The arbitrator denied the remainder of Defendant's claims for fraud, trademark infringement, false marking, trademark dilution and blurring, false advertising, false designation of origin, common law trademark infringement dilution, unfair trade practice, vicarious trademark infringement, unjust enrichment, unfair business practices, constructive process, declaratory relief, defense and indemnification, equitable indemnification, and equitable authority.

56. The arbitrator found in favor of Plaintiff's claims for tortious interference with business relations but denied the claim for fraud.

57. The arbitrator ordered the following relief: the parties shall comply with their respective obligations under the terms of the Settlement and License agreement; Defendant must provide Snapo Toys, LLC and Ms. Kennedy-Kline with access to, and use of, the snapo.com domain and e-mail address and all accounts linked to the snapo.com domain; Defendant shall facilitate Plaintiff's access to the high capacity molds and not interfere with the business relationships between Ms. Kennedy-Kline and Innovative Tool and Die; payments made by Defendant on Vision's outstanding balance for high capacity molds shall be applied to the outstanding balance demanded by ITD for delivery of the high capacity molds to Plaintiff.

58. On March 26, 2021; the arbitrator issued a final award of partial attorneys' fees to Ms. Kennedy Kline. A copy of the Final Arbitration Award is attached as Exhibit "E".

59. Previous counsel attempted to confirm the arbitration awards in the United States District Court for the Eastern District of Pennsylvania, but those efforts were unsuccessful because service was not perfected on Defendant.

60. Upon information and belief, Defendant resides in the Cayman Islands and has remained difficult to contact and serve.

61. Despite repeated notice and requests, Defendant continues to refuse or fail to cooperate with Plaintiff as required by the Settlement and License Agreement.

62. Defendant continues to deny Plaintiff full administrative access to the snapo.com domain, its website and email hosting, and the official social media and communications accounts associated with the Snapo Brand.

63. Defendant's ongoing conduct has impaired Plaintiff's production, marketing, customer communications, retailer onboarding, and ability to respond to commercial opportunities, causing lost revenue, increased costs, lost goodwill, and other continuing damages.

64. Plaintiff has secured a material contractual relationship with a major national retailer (the "National Retailer") for the sale and distribution of Snapo branded products

65. The National Retailer relationship is potentially transformative for Plaintiff and requires Plaintiff to establish that it is the authorized exclusive licensee and lawful source of Snapo branded products.

66. As part of its onboarding and continuing commercial relationship, the National Retailer has requested or requires commercially reasonable confirmation of Plaintiff's licensee status and authority to manufacture, market, distribute, and sell Snapo branded products.

67. Plaintiff has requested that Defendant provide or cooperate in providing that confirmation and has informed Defendant of the urgency and the substantial harm that will result if the National Retailer cannot verify Plaintiff's authority.

68. Defendant has failed or refused to respond or provide the requested confirmation, even though doing so would not transfer ownership of the SNAPO trademark or alter the economic terms of the Settlement and License Agreement.

69. Defendant knows or has been informed that her refusal places Plaintiff's existing relationship with the National Retailer at immediate risk and may prevent Plaintiff from performing under that relationship and receiving anticipated orders.

70. Defendant's continued refusal after receiving actual notice of the National Retailer relationship constitutes purposeful, ongoing conduct directed at Plaintiff's existing and prospective relationships with third parties, rather than merely historical nonperformance under the Settlement and License Agreement.

71. Plaintiff has devoted substantial time and resources to the National Retailer relationship, including production planning, tooling and capacity planning, inventory preparation, marketing, onboarding, and related commercial activities.

72. Loss of the National Retailer relationship would cause substantial lost revenues and profits, stranded investments, loss of goodwill, and potentially threaten the continued viability of Plaintiff's business.

73. Defendant's control of the official SNAPO domain and digital accounts, combined with her refusal to confirm Plaintiff's licensed authority, perpetuates uncertainty among commercial partners regarding who is authorized to speak for, manufacture, and supply the SNAPO brand.

74. Plaintiff has provided Defendant written notice of her ongoing failures, requested cure and cooperation, and explained the resulting business harm. Defendant has not cured her conduct, and the threatened loss of the National Retailer relationship presents immediate and irreparable harm.

75. In addition to the monetary damages Plaintiff has already suffered and that may ultimately be calculated at trial, Defendant's continuing conduct threatens separate and immediate injuries for which a later award of money damages will not provide an adequate remedy.

76. The threatened injury is not limited to the dollar value of anticipated orders from the National Retailer. Loss of that relationship would deprive Plaintiff of access to a national retail and distribution channel, impair Plaintiff's credibility and reputation as the authorized exclusive licensee, damage retailer and customer goodwill, and impair commercial relationships and opportunities that cannot presently be identified or valued with reasonable certainty.

77. The value and duration of future orders, market exposure, downstream retail opportunities, and goodwill flowing from the National Retailer relationship cannot presently be calculated with reasonable certainty. A later monetary judgment cannot restore Plaintiff to the National Retailer's distribution network, recreate lost market opportunities, or repair marketplace uncertainty regarding Plaintiff's authority as the exclusive licensee.

78. Defendant's continuing refusal to provide required access and reasonable confirmation of Plaintiff's licensed authority therefore creates a presently existing threat of irreparable harm that cannot adequately be remedied after final judgment.

79. In addition to withholding administrative access and refusing to confirm Snapo Toys' authority, Defendant has failed and refused to fulfill her obligations concerning protection

and maintenance of the SNAPO brand and associated goodwill despite repeated requests from Plaintiff for assistance.

80. Plaintiff has notified Defendant on multiple occasions of third-party uses that Plaintiff believes infringe or otherwise impair the marks SNAPO and SNAPO Jr. brands and has requested Defendant's assistance in addressing those uses.

81. Defendant has failed or refused to take action or otherwise provide the cooperation reasonably necessary for Plaintiff to protect the commercial value of the licensed brand.

82. When Plaintiff sought assistance concerning third-party infringement and unauthorized uses, counsel acting for Defendant advised that counsel represented Carol Sorenson, not Plaintiff as licensee, and declined to assist Plaintiff in protecting the licensed brand. Defendant nevertheless continued to retain control over the trademark rights and related enforcement decisions necessary to address those third-party uses.

83. Plaintiff also attempted to secure federal trademark protection for SNAPO Jr. in an effort to protect and expand the product line. Defendant challenged or opposed Plaintiff's efforts while failing to obtain or maintain equivalent federal protection herself. As a result, SNAPO Jr. presently lacks the federal trademark registration protection that Plaintiff sought to secure.

84. Defendant's refusal to protect or assist in protecting the licensed brand, her challenge to Plaintiff's efforts concerning SNAPO Jr., and her refusal to confirm Plaintiff's exclusive licensee status have materially impaired the value of the exclusive license and increased the risk that retailers and other commercial partners will question Snapo Toys' authority. That harm is particularly acute in light of the National Retailer relationship.

85. Plaintiff has requested that Defendant provide the requested assurances but Defendant has failed and refused to do so despite her obligations under the Settlement and License Agreement.

86. Access to and commercially reasonable confirmation of the licensed rights are central and necessary for Plaintiff to promote, sell, and expand supply and sales of SNAPO products including through major online marketplace and the National Retailer.

87. Defendant's conduct is harmful to Plaintiff and frustrates Plaintiff's ability to promote, sell, and expand supply and sales of the Snapo products.

88. Defendant's ongoing refusal to cooperate, her continued dissemination of false assertions, and her persistent exercise of dominion over domain and social-media assets and e-commerce Brand Registry constitute a continuing course of obstruction that has caused Plaintiff substantial economic and reputational harm.

89. The threatened injuries described above are ongoing and immediate, and a later award of money damages cannot restore lost retailer access, market position, goodwill, or confidence in Plaintiff's licensed authority once those relationships and opportunities are lost.

## COUNT I
## BREACH OF CONTRACT

90. Plaintiff hereby incorporates paragraphs one through 89 as if fully set forth at length herein.

91. The Settlement and License Agreement is a valid and enforceable contract between Plaintiff and Defendant that grants Plaintiff exclusive licensed rights and imposes express obligations on Defendant to cooperate, facilitate delivery of Vision assets, and provide administrative access to the snapo.com domain and associated accounts.

92. Defendant has repeatedly breached the Settlement and License Agreement by failing to provide full administrative access, failing to reasonably cooperate and facilitate Snapo Toys' exercise of its licensed rights, failing to fulfill her obligations concerning IP protection and trademark maintenance, refusing to cooperate in addressing third-party infringement and unauthorized use of the licensed brand, challenging Snapo Toys' efforts to protect SNAPO Jr. while failing to maintain equivalent federal protection, failing to provide reasonable confirmation of Snapo Toys' licensee status when commercially necessary, and continuing to interfere with access to molds and relationships addressed by the arbitration awards.

93. Defendant's breaches are ongoing and have continued after the arbitration awards, despite her actual knowledge of the obligations found by the arbitrator and the present harm to Plaintiff's business.

94. Defendant's conduct has deprived Plaintiff of the benefit of its bargain and has prevented or materially impaired Plaintiff's ability to perform, commercialize the licensed rights, and satisfy the requirements of retailers and distributors.

95. Defendant has also breached the covenant of good faith and fair dealing by using her continuing control over source-identifying assets, trademark rights, and her status as licensor to frustrate the purposes of the Settlement and License Agreement, including by retaining control over brand protection and enforcement while refusing to protect the brand or reasonably cooperate with Snapo Toys' efforts to do so.

96. Plaintiff has performed its material obligations under the Settlement and License Agreement, or was ready, willing, and able to perform them. Any alleged nonperformance by Plaintiff was excused or caused by Defendant's prior material breaches, obstruction, and prevention of performance.

97. Separate and apart from the irreparable injuries described above, as a direct and foreseeable result of Defendant's breaches, Plaintiff has suffered and continues to suffer compensable monetary damages, including lost sales and profits, increased operating and production costs, and stranded investments. Defendant's conduct also threatens separate prospective injury to Plaintiff's goodwill, retailer relationships, distribution access, and noisiness visibility that cannot be adequately remedied by a later monetary award.

98. The arbitration awards confirmed Defendant's obligations to provide domain and account access, facilitate access to the high-capacity molds, and refrain from interfering with the ITD relationship. Defendant's continued noncompliance further establishes the ongoing nature and willfulness of her breaches and supports specific performance and injunctive relief.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant for compensatory damages, specific performance, preliminary and permanent injunctive relief compelling compliance with the Settlement and License Agreement, interest, attorney's fees where authorized, costs, and such other relief as the Court deems just and proper.

**COUNT II**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**

99. Paragraphs 1 through 98 are incorporated herein by reference as if set forth in full.

100. Plaintiff has an existing contractual relationship with the National Retailer concerning the sale and distribution of Snapo branded products and has existing business and contractual relations with manufacturers, toolmakers, vendors, and other commercial partners, including ITD.

101. Defendant has actual knowledge of the National Retailer relationship and knows that confirmation of Plaintiff's authority and access to the official SNAPO brand assets are material to Plaintiff's ability to preserve and perform that relationship.

102. After receiving notice of those facts, Defendant purposefully failed or refused to provide reasonable confirmation of Plaintiff's licensee status and continued to withhold required access, with the specific intent to interfere or with knowledge that interference was substantially certain to result.

103. Defendant has also interfered with Plaintiff's existing relationship with ITD by instructing ITD not to communicate with Plaintiff and by obstructing access to molds necessary to perform existing commercial obligations.

104. Defendant lacks privilege or justification for this conduct because the requested confirmation and cooperation are consistent with the exclusive license, the Settlement and License Agreement, and the arbitration awards and do not require Defendant to surrender ownership of the trademark.

105. Separate and apart from the irreparable injuries described above, as a direct and proximate result of Defendant's conduct, Plaintiff has suffered compensable monetary damages, including lost orders and profits and increased costs. Defendant's conduct also threatens separate and imminent injury to the National Retailer relationship, Plaintiff's goodwill, access to national distribution, and existing business relationships that cannot be adequately repaired by a later monetary award.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant for compensatory damages, punitive damages, preliminary and permanent injunctive relief prohibiting further interference with the National Retailer and other existing contractual relationships, interest, costs, and such other relief as the Court deems just and proper

**COUNT III**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS**

106. Paragraphs 1 through 105 are incorporated herein by reference as if set forth in full.

107. In addition to the National Retailer relationship, Plaintiff has developed prospective relationships with retailers, distributors, online platforms, manufacturers, and other commercial partners for the manufacture, promotion, distribution, and sale of Snapo branded products.

108. Those relationships are concrete and reasonably probable, rather than speculative, and depend in material part on Plaintiff's ability to demonstrate its licensed authority, control its official brand channels, and maintain adequate production capacity.

109. Defendant knows that prospective retailers and commercial partners require confirmation of Plaintiff's authority and reliable access to the official SNAPO domain and communications channels.

110. Defendant has purposefully withheld that confirmation and access and has failed to communicate after receiving notice that her conduct is delaying, preventing, or materially impairing those prospective relationships.

111. Defendant acted with the purpose of harming Plaintiff's commercial relationships or with knowledge that such harm was substantially certain to result from her continued obstruction.

112. Defendant lacks privilege or justification to interfere with the prospective relationships of her exclusive licensee or to use her control of official brand assets to prevent Plaintiff from commercializing the rights granted under the Settlement and License Agreement.

113. But for Defendant's conduct, there was and remains a reasonable probability that these prospective relationships would be completed or expanded.

114. Separate and apart from the irreparable injuries described above, as a direct and proximate result, Plaintiff has suffered and will continue to suffer compensable monetary damages, including lost sales and profits and increased costs. Defendant's conduct also threatens goodwill, market access and prospective commercial relationships whose value and duration cannot presently be calculated with reasonable certainty.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant for compensatory damages, punitive damages, preliminary and permanent injunctive relief prohibiting further interference with prospective commercial relationships, interest, costs, and such other relief as the Court deems just and proper.

## <u>COUNT IV</u>
## <u>TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS</u>

115. Paragraphs 1 through 114 care incorporated herein by reference as if set forth in full.

116. This Count is pleaded in the alternative to Counts II and III to address Defendant's continuing interference with Plaintiff's broader business relations and operations.

117. Defendant possesses the administrative access and practical ability to provide Plaintiff access to the snapo.com domain and associated accounts and to reasonably confirm Plaintiff's status as the authorized exclusive licensee.

118. Defendant has intentionally used her control over those assets and her refusal to communicate or confirm Plaintiff's authority to disrupt Plaintiff's relationships with customers, retailers, distributors, vendors, manufacturers, and other commercial partners.

119. Defendant's conduct is directed at third-party commercial relationships and marketplace operations and extends beyond a mere failure to make payment or perform a historical contractual obligation.

120. Defendant has actual knowledge of Plaintiff's licensed rights, the arbitration findings, and the threatened harm to the National Retailer relationship, yet has continued her obstruction.

121. Defendant's conduct is intentional, willful, and undertaken with reckless indifference to Plaintiff's rights and the foreseeable destruction of its business relationships.

122. Separate and apart from the irreparable injuries described above, Plaintiff has suffered compensable monetary damages. Defendant's continuing interference also threatens Plaintiff's goodwill, retailer access, and business relationships in ways that cannot be adequately remedied by a later monetary award. Plaintiff therefore seeks compensatory damages, punitive damages, and appropriate injunctive relief.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant for compensatory damages, punitive damages, preliminary and permanent injunctive relief, interest, costs, and such other relief as the Court deems just and proper.

## COUNT V
## CONVERSION

123. Paragraphs 1 through 122 are incorporated by reference as if set forth in full.

124. Plaintiff possesses the immediate right to access, use, and control specific and identifiable property, including administrative credentials for the snapo.com domain, website and email hosting accounts, official social media accounts, and molds and equipment acquired from Vision or addressed by the Settlement and License Agreement and arbitration awards.

125. Defendant has wrongfully exercised dominion and control over these assets by refusing to transfer administrative access to Plaintiff and by excluding Plaintiff from the use and enjoyment of these assets.

126. Defendant's continued retention of credentials and practical control persists despite the arbitrator's determination that Defendant must provide access and facilitate delivery of the assets addressed by the award.

127. Defendant's conduct is inconsistent with Plaintiff's rights and constitutes the tort of conversion under Pennsylvania law.

128. This conversion claim is pleaded in the alternative to Plaintiff's contract remedies to the extent Defendant's dominion over specific property constitutes an independent interference with Plaintiff's immediate possessory rights.

129. As a direct and proximate result, Plaintiff has suffered compensable damages including lost business opportunities, lost goodwill, and the inability to operate its business efficiently.

130. Separate and apart from the irreparable injuries described above, as a direct and proximate result, Plaintiff has suffered compensable damages including loss of use, increased costs, lost business and lost profits.

131. Defendant's continued withholding of source-identifying digital assets also causes separate harm to Plaintiff's ability to control official communications, demonstrate its authorized status to retailers and customers, and preserve goodwill, which cannot be fully remedied by money damages. Plaintiff is also entitled to the return of, or immediate access to, the specific property and credentials over which Defendant continues to exercise wrongful control.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant for compensatory damages, punitive damages, return or access to the converted property, interest, costs, and such other relief as the Court deems just and proper.

**COUNT VI**
**DECLARATORY JUDGMENT**
**(28 U.S.C. § 2201 – Exclusive License Status, Domain, and Brand Assets)**

132. Paragraphs 1 through 131 are incorporated herein by reference as if set forth in full.

133. An actual, substantial, and continuing controversy exists concerning Snapo Toys' status and authority as the exclusive licensee, its right to manufacture, market, distribute, and sell Snapo branded products and related products within the licensed Snapo Brand, including SNAPO Jr. to the extent covered by the Settlement and License Agreement, and its right to access, administer, protect, and commercially exploit the associated brand assets.

134. Under the Settlement and License Agreement and arbitration awards, Snapo Toys possesses the exclusive right to develop, manufacture, market, distribute, and sell Snapo branded products, to use the licensed Snapo Brand in connection with those activities, and to receive the administrative access and cooperation required by the Settlement and License Agreement, including reasonable cooperation necessary to preserve the commercial value of the licensed brand.

135. Defendant has created and maintained uncertainty concerning those rights by refusing to provide required administrative access, failing or refusing to confirm Snapo Toys' authority to the National Retailer and other commercial partners, refusing to assist with identified third-party infringement and unauthorized uses, challenging Snapo Toys' efforts to secure protection for SNAPO Jr., and otherwise acting inconsistently with the Settlement and License Agreement and arbitration awards.

136. Plaintiff seeks a declaration that: (a) it is the exclusive licensee and authorized manufacturer, marketer, distributor, and seller of Snapo branded products and related products within the licensed Snapo Brand; (b) Defendant may not deny, misrepresent, or condition

recognition of that status; (c) Defendant must reasonably cooperate in confirming Plaintiff's licensed authority to the National Retailer and other commercial partners when requested; (d) Plaintiff is entitled to full administrative access to the snapo.com domain and associated accounts; (e) Defendant must reasonably cooperate in protecting and maintaining the commercial value of the licensed Snapo Brand consistent with her obligations under the Settlement and License Agreement; and (f) Defendant must refrain from interfering with Snapo Toys' exercise of its licensed rights and commercial relationships.

WHEREFORE, Plaintiff respectfully requests that the Court enter the declarations set forth above, grant preliminary and permanent injunctive relief necessary to make those declarations effective, and award such other relief as the Court deems just and proper.

## COUNT VII
## IRREPARABLE HARM AND INJUNCTIVE RELIEF

137. Paragraphs 1 through 136 are incorporated herein by reference as if set forth in full.

138. Plaintiff seeks equitable relief to preserve the status quo and prevent continuing injury pending final adjudication.

139. As set forth more fully above, Defendant's actions, and inactions, jeopardizes Plaintiff's ongoing acts and omissions threaten the loss of key retailer relationships, access to national distribution channels, customer and retailer goodwill, and Plaintiff's credibility as the authorized exclusive licensee. These threatened injuries are distinct from past monetary losses and cannot be fully restored by a later damages award.

140. Defendant's continual refusal to cooperate with her legal obligations creates uncertainty related to Plaintiff's authority and interferes with its ability to grow the business.

141. Such conduct creates an immediate danger of irreparable harm that cannot be adequately remedied by an award of monetary compensation after final judgment.

142. The National Retailer relationship involves future orders, market access, downstream opportunities, retailer confidence, and goodwill whose duration and value cannot presently be calculated with reasonable certainty.

143. Among other things, Defendant should be directed to (a) provide access to the snapo.com domain, associated email services, and the official Snapo Toys' social media accounts; (b) provide reasonable written confirmation, when requested by the National Retailer or other commercial partners, of Plaintiff's status as the exclusive licensee and authorized seller of licensed SNAPO products; and (c) refrain from interfering with Plaintiff's retailer and other commercial relationships or making statements inconsistent with Plaintiff's licensed authority.

WHEREFORE, Plaintiff respectfully requests that the Court grant preliminary and permanent injunctive relief necessary to prevent the threatened irreparable harm including relief requiring Defendant to provide access and reasonable confirmation described above and to refrain from interfering with Plaintiff's retailer and other commercial relationships.

**<u>CLAIM FOR RELIEF</u>**

Plaintiff, Snapo Toys, LLC, respectfully requests that this Court award the following relief in its favor and against the Defendant, Carol Sorenson:

A. Enter judgment in favor of Plaintiff and against Defendant on all applicable Counts;

B. Declare the rights and obligations of the parties as requested in Count VII;

C. Enter preliminary and permanent injunctive relief requiring Defendant to provide reasonable written confirmation of Snapo Toys' exclusive licensee status to the National Retailer and other commercial partners, provide the required administrative

access, reasonably cooperate in protecting and maintaining the licensed Snapo Brand, comply with the Settlement and License Agreement and arbitration awards, and refrain from interfering with or misrepresenting Snapo Toys' licensed rights and commercial relationships;

D. Award compensatory damages for past and other calculable economic losses in an amount to be determined at trial, including lost revenues and profits, increased costs, stranded investments, and other compensable consequential damages; and

E. Award punitive damages on the tort claims attorney's fees where authorized, costs, pre-judgment and post-judgment interest, and such other relief as the Court deems just and proper.

Respectfully submitted,

**BARLEY SNYDER LLP**

By: __________________________

Kevin A. Moore, Esquire
Attorney I.D. No. 75068
Joseph Falcon, Esquire
Attorney I.D. No. 94658
Thad M. Gelsinger, Esquire
Attorney I.D. No. 208233
2755 Century Blvd
Wyomissing, PA 19610
610-370-8110
kmoore@barley.com
jfalcon@barley.com
tgelsinger@barley.com
*Attorneys for Plaintiff*