# EXHIBIT "B"

# AGREEMENT OF SALE

**THIS AGREEMENT OF SALE** (the "Agreement") is made on 2.22, 2019 by and between Vision Plastics Manufacturing, Inc. ("VPM"), the seller and selling shareholder, and Snapo Toys, LLC ("Snapo"), the purchaser. The parties are referred to singularly as "Party" and collectively as the "Parties."

## RECITALS

**WHEREAS,** Seller owns and operates Vision Plastics Manufacturing, d/b/a Snapo ("the Business")

**WHEREAS,** Seller has agreed to sell and Purchaser has agreed to purchase all of the assets, licenses and usages of all patents, technology and intellectual property relating to Snapo products including all copyrights and all trademarks and good will associated with the normal operations of manufacturing and sales of Snapo products therewith:

**NOW THEREFORE,** in consideration of the mutual covenants and agreements contained in this Agreement, and other good and valuable consideration, the receipt and sufficiently of which are hereby acknowledged, the parties agree as follows:

## TERMS AND CONDITIONS

### SALE OF BUSINESS

1. Subject to the other provisions of this Agreement, as of the Closing Date, defined below, Seller shall sell, convey, transfer and assign to Purchaser, free and clear of all liens, charges, encumbrances, debts, obligations and liabilities whatsoever, all of the Seller's right, title and interest in and to the following:

- Inventory seller-valued at $57,005.53 (as itemized in Excel spreadsheet)
- Equipment seller-valued at $764,023.19 (as itemized in Excel spreadsheet)
- All customer and vendor lists relating to Snapo products
- Snapo mailing list
- All rights, title, and interests in, to, and under:
  - The domain name snapo.com and all URLs that redirect, point, or otherwise lead to snapo.com such as snapotoys.com, including website and all website content, including all but not limited to copyrights to any and all web pages and content on the web pages, page layouts for the website, all graphics used at the website, all databases generated for the website, online forms and scripts used at the website and all banner or other advertisements for the website.
  - The Snapo Facebook Account
  - The Twitter Snapo Account
  - The Pinterest Snapo Account

  - The YouTube Snapo Account
  - The Instagram Snapo Account
- Any and all know-how, technology, and intellectual property relating to Snapo products, including all copyrights and all trademarks and the goodwill associated therewith
- Any and all rights, interests, claims, and causes of action arising under or from any agreement pertaining to Snapo products and Snapo-related intellectual property, technology, and inventions, whether such agreement is written or oral and whether such agreement is explicit or implied. This includes but is not limited to any and all such agreements between Vision Plastics Manufacturing, Inc. and each of Christian Sorensen; Carol Sorensen; and both Soren Christian Sorensen and Carol Sorensen
- All rights, title, and interests in, to and under the intellectual property identified in the attached Schedule ("Intellectual Property").
- All rights, title and interest, including the purchase of Vision Plastics Manufacture, Inc.

ing

**CLOSING DATE**

The Closing Date for the sale of Snapo as set forth in this Agreement shall be February 28, 2019.

**CONSIDERATION AND PAYMENT**

2. **Purchase Price**: The total purchase price ("Purchase Price") for the business shall be a total of Two Hundred Thousand dollars ($200,000.00) payable as follows:

$50,000.00 upon full execution of this Agreement of Sale
$100.000.00 within 60 days of full execution of this Agreement of Sale
$50.000.00 within 6 months of full execution of this Agreement of Sale

As per the Shareholders Agreement between VPM and Carol Sorenson. which is included as part of the sale of Snapo in this Agreement of Sale, the following recurring royalty payments shall be made:

- Royalty Payments to Carol Sorenson shall be made on a quarterly basis.
- Ms. Sorenson shall receive 5% royalty payment once the total cumulative of all Net Sales first equals $310.000.00.
- Net Sales is defined to be the sum of (a) the total amount actually received by Snapo Toys during a quarter for sales of Snapo-branded

products sold by Snapo Toys, less allowances for returns, discounts, rebates, commissions, freight, customs, duties, and taxes on, for, or related to such Snapo-branded products; and (b) the total amount actually received by Snapo Toys as consideration for the licensing of rights under the Intellectual Property, less any and all fees and costs incurred by Snapo Toys associated with licensing.

- Payment of the Royalties shall end on March 1, 2029, ten years after the date of this contract.

- As per the Shareholder Agreement, that is part of the purchase of Snapo and Vision Plastics Manufacturing, Snapo, LLC shall have the right of first refusal to renew the patents as their term expires.

**ASSUMPTION OF LIABILITIES**

Seller agrees to ensure that all liabilities and debts will be paid ten (10) days a ✓ RM after the final payment of the Purchase Price. On and after the ten (10) day period in which the final debts shall be paid. Purchaser shall be responsible and agrees to pay and perform on any and all liabilities incurred thereafter.

**SELLER'S REPRESENTATIONS AND WARRANTIES**

Seller hereby represents and warrants as follows, which representations and warranties shall survive the Closing Date:

**Organization and Good Standing.** Seller is an Corporation and duly organized, Validly existing and in good standing under the laws of the State of California and is authorized to transact such business as contained in this Agreement.

**Authority Relative to this Agreement.** Seller has full power and authority to execute and deliver this Agreement and to consummate the transactions contemplated in this Agreement.

**Binding Obligation** This Agreement is the legal. valid. and binding obligation of Seller.
enforceable against Seller in accordance with its terms.

**No Conflict** The signing and delivery of this Agreement by Seller and the performance by Seller of all of Seller's obligations under this Agreement will not:
(a) conflict with Seller's articles of organization / articles of incorporation or operating

agreement / bylaws];
(b) breach any agreement to which Seller is a party, or give any person the right to accelerate any obligation of Seller;
(c) violate any law, judgment, or order to which Seller is subject: or
(d) require the consent, authorization, or approval of any person, including but not limited to any governmental body.

**Title** Seller has good and marketable title to all the Assets, free and clear of any liens, mortgages, pledges, security interests, and other encumbrances of any kind.

**Compliance with Laws** Seller has complied with all applicable city, state, and federal laws, ordinances, regulations, and rules with respect to the conduct of its operations, and has not received: (whether written or oral) of violations of any such statutes or regulations which have not been cured.

**Litigation** There are no actions, suits, proceedings or investigations pending or threatened against or affecting Seller, the Assets, or the Business.

**Conduct of Business.** Seller has operated the Business in the ordinary course consistent with past practices and there has been no adverse material change in the Business. Seller has not accrued debts on behalf of the Business or disposed of any assets of the Business, other than those debts accrued in the ordinary course of business.

**Taxes** All tax returns of every kind (including returns of real and personal property taxes, intangible taxes, withholding taxes, and unemployment compensation taxes) relating to the Business that Seller was required to file in accordance with any applicable law have been duly filed, and all taxes shown to be due on such returns have been paid in full.

**Disclosure** No representation, warranty, or statement made by Seller in this Agreement or in any Exhibit to this Agreement contains or will contain any untrue statement or omits or will omit any fact necessary to make the statements contained herein or therein not misleading. Seller has disclosed to Purchaser all facts that are material to the financial condition, operation, or prospects of the Business, the Assets, and the Assumed Liabilities.

**PURCHASERS REPRESENTATIONS AND WARRANTIES**

Purchaser hereby represents and warrants as follows, which representations and warranties shall survive the Closing Date:

**Organization and Good Standing** Purchaser is SNAPO, LLC, duly organized and validly existing under the laws of the Commonwealth of Pennsylvania and is qualified to transact business in the Commonwealth of Pennsylvania.

**Authority Relative to this Agreement.** The execution and performance of this Agreement by Purchaser has been duly and validly authorized by all necessary action on the part of Purchaser. Purchaser has full power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby.

**Binding Obligation.** This Agreement is the legal, valid, and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, or other similar laws of general application or by general principles of equity.

R.M

**Indemnification**

Seller's Indemnification. Seller hereby agrees to indemnify, defend, and hold Purchaser and its assigns, directors, members, managers, partners, officers, and authorized representatives harmless from and against any and all claims, liabilities, obligations, costs, taxes, fees, wages, financial obligations,
and expenses of every kind, including reasonable attorney fees, whether known or unknown, arising out of or related to:
(a) Seller's breach of the representations, warranties, covenants, or other obligations of Seller made in this Agreement or any other agreement or document relating to this transaction;
(b) Seller's breach of any liabilities or obligations of Seller in connection with the use, ownership, condition, maintenance, or operation of the Business or the Assets by Seller or its
members on or before the Closing Date.

**Purchaser's Indemnification.** Purchaser hereby agrees to indemnify, defend, and hold Seller and its assigns, directors, members, managers, partners, officers, and authorized representatives harmless from and against any and all claims, liabilities, obligations, costs, taxes, fees, wages, financial obligations, and expenses of every kind, including reasonable attorney fees, whether known or unknown, arising out of or related to:

(a) Purchaser's breach of the representations, warranties, covenants or other obligations of Purchaser made in this Agreement or any other agreement or document relating to this transaction;

(b) Any liabilities or obligations of Purchaser, including the Assumed Liabilities, in connection with the use, ownership, condition, maintenance, or operation of the Business or the Assets by Purchaser after the Closing Date.

**Notice of Claim** If any claim is asserted against a party that would give rise to a claim by that party against the other party for indemnification under the provisions of this Section, then the party to be indemnified will promptly give written notice to the indemnifying party concerning such claim and the indemnifying party will, at no expense to the indemnified party, defend the claim.

**Equitable Relief** The parties acknowledge that the remedies available at law for any breach of this Agreement by a breaching party will, by their nature, be inadequate. Accordingly, the nonbreaching party may obtain injunctive relief or other equitable relief to restrain a breach or threatened breach of this Agreement or to specifically enforce this Agreement, without proving that any monetary damages have been sustained. Neither party shall require the posting of a bond prior to obtaining such equitable relief.

**General Provisions**

**Notices.** All notices required under this Agreement shall be in writing, and shall be deemed duly given (a) when delivered, if delivered personally, (b) at the end of the day after deposit if sent by overnight express courier service, or (c) at the end of the third business day after deposit if sent by registered or certified mail, return receipt requested and postage prepaid, to the parties as set forth in the signature page below, or at such other address as may be supplied by similar written notice, or (d) when sent, if by email.

**Amendment; Waiver.** This Agreement may not be amended, nor may any rights under it be waived except by an instrument in writing signed by both parties.
**Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania applicable to agreements made and to be performed wholly within such jurisdiction, without giving effect to the provisions, policies or principles thereof relating to choice or conflict of laws.

**Binding Effect.** Except as provided otherwise herein, this Agreement shall be binding upon and shall inure to the benefit of the parties and their respective legal representatives, successors and assigns.

**Severability** If a provision of this Agreement is determined to be unenforceable in any respect, the enforceability of the provision in any other respect and of the remaining provisions of this Agreement will not be impaired.

**Headings** The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning of this Agreement.

**Expenses** All fees and expenses incurred by each party in connection with this Agreement and the transaction contemplated in this Agreement shall be borne by that party.

**Survival** All provisions of this Agreement that would reasonably be expected to survive the termination of this Agreement will do so.

**Attorney Fees** If any arbitration or litigation is instituted to interpret, enforce, or rescind this Agreement, including but not limited to any proceeding brought under the United States Bankruptcy Code, the prevailing party on a claim will be entitled to recover with respect to the claim, in addition to any other relief awarded, the prevailing party's reasonable attorney's fees and other fees, costs, and
expenses of every kind.

**Attachments** All exhibits and other attachments referenced in this Agreement are part of this Agreement.

**Entire Agreement** This Agreement constitutes the entire agreement among the parties and supersedes any prior agreement or understanding among the parties concerning its subject matter.

**Assignment** This Agreement may not be transferred, assigned, pledged or hypothecated by either party without the prior written consent of the other party.

**Counterparts** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original but all of which shall constitute one agreement. Furthermore, this Agreement may be executed by a party's signature transmitted by facsimile or by electronic mail, and copies of this Agreement executed and delivered by means of faxed or electronic mail shall have the same
force and effect as copies hereof executed and delivered with original signatures. All parties hereto may
rely upon faxed or electronic mail as if such signatures were originals.

[Signature page to follow]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective as of the day and year first written above.

2-27-2019

By: Rob Miller, A President
Vision Plastics Manufacturing Inc.
d/b/a Snapo

2-23-2019

Tara Kennedy Kline
Snapo, LLC