# EXHIBIT "D"

**AMERICAN ARBITRATION ASSOCIATION**
**Commercial Arbitration Tribunal**

**In the Matter of the Arbitration between**

**Case Number: 01-19-0003-3665**

**Carol Sorensen, individually and in her capacity as Executor of the Estate of Soren Christian Sorensen** **("Claimant")**
**-vs-**
**Multi-Level Mom, LLC dba TK's Toy Box; Snapo Toys, LLC; and Tara Kennedy-Kline** **("Respondents")**

**PARTIAL FINAL AWARD OF ARBITRATOR**

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated June 17, 2019, and having been duly sworn, and having duly heard the proofs and allegations of Claimant, represented by Thomas Frost, Esq., of The Frost Firm, and Respondents, represented by Robin Gray, Esq., of The Law Offices of Robin Gray, and Chad Tillman, Esq., of Tillman Wright, PLLC, hereby, FIND and AWARD as follows:

The Parties agreed to a standard award with some limited reasoning. While all facts and law presented were reviewed and considered, this award does not address all facts or law relied upon in rendering this award.

Claimant, Carol Sorensen, initiated this arbitration against Snapo Toys, LLC ("Snapo"), Multi-Level-Mom, LLC d.b.a. TK's Toy Box ("MLM") and Tara Kennedy-Kline asserting claims for "breach of the Parties' Settlement and License Agreement ("the Agreement"), or, in the alternative, for the various infringing activities that were purportedly settled by this Agreement." Claimant's First Amended Statement of Claim at 1. Respondents opposed the claims and asserted counterclaims of tortious interference with business relations, fraud and declaratory and preliminary and permanent injunctive relief. Claimant opposed these counterclaims.

Underlying this dispute is an Agreement of Sale between Snapo and Vision Plastics Manufacturing (Vision), which was the subject of litigation in California and later, in Pennsylvania. The operative agreement for this arbitration is the Settlement and License Agreement between Snapo and Ms. Sorensen. According to whereas clauses in the Settlement and License Agreement, Ms. Sorensen owns all rights, titles, and interests in certain patents and technologies for the manufacture of Snapo brand products, including intellectual property (IP) listed in the Intellectual Property Schedule, and she is the owner of the Snapo Trademark Registration (as defined), the snapo.com domain, other marks relating to Snapo, and the goodwill associated therewith.

The License portion of the Settlement and License Agreement (referred to as the "License") granted Snapo an exclusive license in the U.S. to develop, make, produce, market, sell, offer for sale, use, import, and distribute articles covered by the Licensed Patents and to practice any process or method covered by the Licensed Patents. Paragraph 4 of the License anticipated that, subject to certain terms, Snapo may produce molds to facilitate its manufacturing volume and it makes reference to the production of molds to facilitate growth. Paragraph 14 of the License identified the molds to be used in making interlocking toy building elements. It also referenced two high capacity Sorensen Molds in the possession of Innovative Tool and Die Inc. ("ITD"). During the term, Snapo had the exclusive right to the Sorensen Molds, subject to the terms of the License.

Paragraph 13 of the License required Snapo to use commercially reasonable efforts to promote, sell, and expand the supply and sales of interlocking toy building elements of the IP and related accessories of the IP. Evidence produced at the hearing showed that on behalf of Snapo, Ms. Kennedy-Kline pursued efforts to promote, sell, and expand Snapo. Efforts included, *inter alia*, attempts to update the snapo.com website, obtain access to email tied to the domain snapo.com, acquire the two high capacity Sorensen Molds from ITD, and obtain mold drawings and/or quotes from ITD and other mold makers for new molds.

The clear intent of the License, as reflected in the last whereas clause, was for Snapo to obtain an exclusive license to develop, make, produce, market, sell, offer for sale, use, import, and distribute articles protected by the IP under the Snapo Brand. Paragraph 37 of the License required Ms. Sorensen to reasonably cooperate and assist Snapo with, and otherwise facilitate where possible, in the delivery of assets to Snapo. Access to the IP was central to the License and necessary for Snapo to meet its obligations to promote, sell, and expand supply and sales.

<u>Snapo.com Website and Email</u> - Testimony established that to establish an updated internet presence for Snapo which was necessary to promote, sell, and expand the supply and sales of Snapo products, it was essential to update the existing website to current standards. It was also necessary to obtain access to the email account linked to the snapo.com domain so communications with prospective buyers of Snapo could be conducted in a professional manner. Ms. Sorensen was required to pay for and grant Snapo "administrator access" to the domain name registration for snapo.com and other domains associated with the goodwill of the Snapo Brand, and pay for and grant "administrator access" to the website and email hosting accounts associated with snapo.com.

At the hearing, Ms. Sorensen acknowledged that Snapo had the right to use the snapo.com domain while she remained the owner. Evidence at the hearing also established that the level of access necessary to build a current version of the snapo.com website and to have access and use of snapo.com email was not provided by Ms. Sorensen and frustrated Ms. Kennedy-Kline's attempts to promote, sell, and expand supply and sales, as required by the License.

<u>Sorensen Molds</u>

At the hearing, testimony established that high capacity molds were essential to the growth of Snapo because without them, only one interlocking piece could be made at a time. The License provided Snapo with the exclusive right to the two Sorensen high capacity molds in the possession of ITD. The high capacity molds were never provided to Snapo.

Ms. Kennedy-Kline made numerous efforts to obtain molds, mold drawings, and quotes from Mr. Klomp, President of ITD, the only mold maker Snapo could use to make new molds without approval of Ms. Sorensen. Evidence reflected that Ms. Sorensen limited Ms. Kennedy-Kline's ability to establish a working relationship with Mr. Klomp and interfered with Snapo's exclusive right to gain access to the Sorensen Molds in the possession of ITD. Emails reflected communications between Ms. Sorensen and Mr. Klomp about Ms. Kennedy-Kline's requests of ITD. Ms. Sorensen failed to facilitate and assist with Ms. Kennedy-Kline's requests of ITD and instead, limited the ability of Ms. Kennedy-Kline to work with ITD and her ability to obtain access to the Sorensen high capacity molds.

Mr. Klomp would not release the Sorensen high capacity molds to Snapo because there was an outstanding balance on the molds. Testimony established that unbeknownst to Snapo and Ms. Kennedy-Kline, Ms. Sorensen had an undisclosed payment agreement with Mr. Klomp. To induce Mr. Klomp to work on molds, Ms. Sorensen's deceased husband, and later Ms. Sorensen, made payments to IDT towards the balance owed by Vision for molds. Pursuant to the undisclosed agreement, payments later made by Vision to IDT would then be directed to the Sorensen's account so they could recoup their prior payments. This agreement was never disclosed and when Ms. Kennedy-Kline attempted to gain access to the Sorensen high capacity molds for Snapo by seeking to address the outstanding payment owed by Vision for the Sorensen Molds, ITD falsely quoted the full price of the molds even though payments had already been made on the molds by Ms. Sorensen.

Based on the foregoing and the evidence presented at the evidentiary hearing, all of which was considered, I make the following rulings:

1. Multi-Level-Mom, LLC d.b.a. TK's Toy Box is not a proper party to this dispute and is dismissed.

2. Claimant's Claims
   a. Breach of Contract is DENIED in its entirety. Ms. Sorensen failed to perform all of her obligations under the terms of the Settlement and License Agreement and frustrated Snapo's ability to comply with certain of its obligations. While Ms. Kennedy-Kline disclosed the Settlement and License Agreement in a court filing, there was not a sufficient nexus established between the filing and damages alleged by Ms. Sorensen. Other allegations of breach are also denied.
   b. Fraud/Fraudulent Inducement is DENIED. There was no evidence reflecting fraud or fraudulent inducement.
   c. All remaining claims are DENIED. Claims for federal trademark infringement, false marking/trademark dilution and blurring, false advertising/false designation of origin, common law trademark infringement/dilution/unfair trade practice, vicarious trademark infringement, unjust enrichment/unfair business practices/constructive trust, declaratory relief, defense and indemnification, equitable indemnification/equitable authority were not proven.

3. Snapo Toys, LLC and Ms. Kennedy-Kline's Claims

a. Tortious Interference with Business Relations is GRANTED. Elements of the claim were proven but monetary damages were not established with sufficient certainty and are not awarded.
b. Fraud is DENIED. All parties to this Settlement and License Agreement are sophisticated and were represented by counsel and had the ability to engage in due diligence regarding the intellectual property. There was no evidence Ms. Sorensen engaged in fraud, as alleged.
c. Declaratory and preliminary and permanent injunction is DENIED as moot.

All claims and counterclaims not expressly granted herein are hereby, DENIED.

Relief Granted:

1. The Settlement and License Agreement was not repudiated or terminated. The parties shall comply with their respective obligations under the terms of the agreement.
2. Ms. Sorensen must provide Snapo and Ms. Kennedy-Kline with access to, and use of, the snapo.com domain and email address and all accounts linked to the snapo.com domain.
3. Ms. Sorensen shall facilitate Ms. Kennedy-Kline and Snapo's access to the high capacity Sorensen molds held at ITD and not interfere with the business relationship between Ms. Kennedy-Kline and Mr. Klomp/ITD.
4. Payments made by Mr. and/or Mrs. Sorensen on Vision's outstanding balance for the Sorensen high capacity molds, if any, shall be applied to the outstanding balance demanded by ITD for delivery of the Sorensen high capacity molds to Snapo and Ms. Kennedy-Kline.
5. Snapo shall release any royalties held in escrow to Ms. Sorensen.
6. Pursuant to the terms of the Settlement and License Agreement, the arbitrator may award costs, expenses and reasonable attorneys' fees. The arbitrator will defer a determination as to whether such an award, in whole or in any part, is to be granted to Ms. Kennedy-Kline and Snapo in the Final Award. Snapo and Ms. Kennedy-Kline shall submit an affidavit of attorneys' fees and costs no later than ten days after the filing of this Partial Final Award. Ms. Sorensen shall submit any objection no later than ten days after receipt of Respondents' submissions. The Arbitrator will issue a Final Award no later than 30 days following receipt of final submissions.

This Partial Final Award is final with respect to the matters specifically addressed herein and shall remain in full force and effect until the Final Award is rendered. All claims and counterclaims not expressly granted, except an award of costs, expenses and reasonable attorneys' fees that is deferred for consideration to the Final Award, are dismissed and no relief is granted on any of such claims or counterclaims.

2/3/21 ______________ [signature] ______________

Date Sandra A Jeskie, Arbitrator

I, Sandra A. Jeskie, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

2/3/21 ______________ ______________________

Date Sandra A Jeskie, Arbitrator