IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SNAPO TOYS, LLC<br>Plaintiff<br><br>v.<br><br>CAROL SORENSEN<br>Defendant | :<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No. 5:26-cv-07419-JFL |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

AND NOW, comes Plaintiff, Snapo Toys, LLC ( "Snapo Toys"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 65, respectfully moves the Court for entry of: (a) a preliminary injunction against Defendant, Carol Sorensen ("Defendant"), preserving the status quo which includes a National Retailer Opportunity of immeasurable scale, and preventing irreparable injury pending resolution of the parties' dispute, including through the arbitration required by Section 28 of the Settlement and License Agreement, for the reasons stated in Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction; and (b) for such other further relief deemed appropriate by the Court, and in support thereof avers as follows:

1. Vision Plastics Manufacturing ("Vision") was incorporated in California on May 22, 2012 by Soren Christian Sorensen ("Mr. Sorensen"), Defendant's late husband, for the purpose of manufacturing Snapo branded toy products.

2. Pursuant to Section 8 of the Shareholder Agreement, Mr. Sorensen granted an exclusive license for the use of patents and technologies which he owned to Vision. *See* Compl. Ex. A. § 8.

3. Mr. Sorensen granted Vision a license to use the Snapo trademark under U.S. Trademark Registration No. 4,419,358.

4. The understanding of the executing parties to the Shareholder Agreement was that the exclusive patent license was irrevocable and that the patent license would transfer with any future sale of the company.

5. After Mr. Sorensen's death in 2017, Defendant inherited a 27.666% share interest in Vision and three other minority shareholders owned the remainder of Vision: Robert Miller, the Chief Financial Officer of Vision (17%), Stephen Rhodes (27.666%), and Jon Kemmer, the Secretary of Vision (27.666%).

6. On or about February 22, 2019, Plaintiff by and through its President, Ms. Tara Kennedy-Kline, and Vision executed an Asset Purchase Agreement ("Asset Purchase Agreement"). *See* Compl. Ex. B. The Asset Purchase Agreement sets forth in detail all of the equipment, inventory, customer lists, vendor lists, as well as all rights and interest to Snapo's domain name and social media accounts to be conveyed to Plaintiff and provides that "any and all know-how, technology and intellectual property relating to Snapo products, including all copyrights, trademarks and the goodwill associated therewith" would become the property of Plaintiff. Compl. Ex. B § 1. The Agreement further provided that any agreements between Mr. Sorensen and Defendant and Vision shall be transferred and made a part of the Asset Purchase Agreement. Compl. Ex. B § 2. The Agreement provided that Defendant was to receive a 5% royalty payment based upon the revenue generated by Snapo sales for 10 years which Plaintiff also believed to be agreed upon by Defendant. Compl. Ex. B § 2.

7. In May 2019, Defendant initiated a lawsuit against Vision and Plaintiff in the U.S. District Court for the Southern District of California, docketed at No. 19-cv-00738 related to her

claims of intellectual property transferred by Vision to Plaintiff. Shortly thereafter, the matter was resolved through a Settlement and License Agreement between Defendant and Plaintiff ("Settlement and License Agreement"). *See* Compl. Ex. C.

8. It is this Agreement that is the basis of this action. The Settlement and License Agreement granted Plaintiff an exclusive license in the United States and worldwide "to develop, make, produce, market, sell, offer for sale, use, import, and distribute articles" covered by the licensed patents under the Snapo Brand. Compl. Ex. C. § 2. The Settlement and License Agreement requires Defendant to reasonably cooperate and assist Plaintiff with the delivery of assets of Vision to Plaintiff, including that Defendant must pay for and grant Plaintiff administrative access to: (a) the domain name registration snapo.com and any other domain name associated with the Snapo Brand; (b) website and email hosting account for snapo.com; and (c) social media accounts associated with the Snapo Brand such as Instagram, LinkedIn, YouTube, Grasshopper, Pinterest, and Twitter. *See* Compl. Ex. C § 37.

9. The Settlement and License Agreement effectively resolved the parties' prior disputes and independently confirmed Defendant's obligation to cooperate with and facilitate delivery of Vision assets and to provide Plaintiff with administrative access to the domain, hosting, email, and social media accounts identified in Paragraph 37 of the Settlement and License Agreement.

10. However, even after its execution, Defendant retained control over the official Snapo domain, website, email infrastructure, and social media accounts, thereby preventing Plaintiff from fully accessing and administering those assets for business purposes. Likewise, Defendant also retained control over the domain name registration which she has refused to transfer to Plaintiff.

11. The Settlement and License Agreement also requires that any controversy or claim arising out of or relating to the Agreement, or its breach, be resolved by binding arbitration in Pennsylvania under the American Arbitration Association's Commercial Arbitration Rules. See Compl. Ex. C § 28. The preliminary relief requested here is intended to preserve the status quo and prevent the National Retailer Opportunity from being lost before the underlying dispute can be resolved on the merits.

12. In 2019, Defendant initiated a second action against Plaintiff, asserting claims for breach of the Settlement and License Agreement, again on the basis of meritless intellectual property claims and business torts. On February 3, 2021 the American Arbitration Association not only denied Defendant's claim for breach of contract in its entirety, the Arbitrator separately found that Defendant failed to perform all of her obligations under the terms of the Settlement and License Agreement which frustrated Plaintiff's ability to comply with certain third party business obligations ("Arbitration Award"). *See* Compl. Ex. D at p. 3..

13. The Arbitration Award also found in favor of Plaintiff's claims for tortious interference with business relations and ordered, inter alia, the following relief: [1.] the parties shall comply with their respective obligations under the terms of the Settlement and License agreement; [2.] [Defendant] must provide Snapo Toys, LLC and Ms. Kennedy-Kline with access to, and use of, the snapo.com domain and e-mail address and all accounts linked to the snapo.com domain; [3.] [Defendant] shall facilitate Plaintiff's access to the high capacity molds and not interfere with the business relationships between Ms. Kennedy-Kline and Innovative Tool and Die; [4.] Payments made by Defendant on Vision's outstanding balance for high capacity molds shall

be applied to the outstanding balance demanded by Innovative Tool and Die, Inc. for delivery of the high capacity molds to Plaintiff and Ms. Kennedy-Kline.[1] *See* Compl. Ex. D at p. 4.

14. Despite repeated notice and requests, Defendant continues to refuse to cooperate with Plaintiff as required by the Settlement and License Agreement, and the Arbitration Award by:

a. denying Plaintiff full administrative access to the snapo.com domain, its website and email hosting, and the official social media and communications accounts associated with the Snapo Brand;

b. Impairing Plaintiff's production, marketing, customer communications, retailer onboarding, and ability to respond to commercial opportunities, causing lost revenue, increased costs, lost goodwill, and other continuing damages; and

c. Preventing Plaintiff from completing onboarding and brand verification for a material, and potentially transformative, contractual relationship with a major national retailer (the "National Retailer") for the exclusive sale and distribution of Snapo branded products this 2026 Holiday Season, from which Defendant stands to receive royalties ("National Retailer Relationship").

15. While each breach is material, Defendant's obstruction of the National Retailer Relationship is particularly urgent. As part of its onboarding and continuing commercial relationship, the National Retailer has requested or requires commercially reasonable verification of Plaintiff's licensee status and authority to manufacture, market, distribute, and sell Snapo branded products ("IP Rights") through its brand-registry process. The verification code is sent to

[1] Prior counsel attempted to confirm the arbitration awards in the United States District Court for the Eastern District of Pennsylvania, but those efforts were unsuccessful because Defendant, despite being represented by Counsel at all times, evaded services of process in the U.S. and the Cayman Islands.

the email address associated with the existing SNAPO registration, which Plaintiff does not control. Plaintiff therefore cannot complete the verification without Defendant's cooperation. Plaintiff has requested that Defendant, as the Licensor of the IP Rights, provide or cooperate in providing that verification and has informed Defendant of the urgency related to the 2026 Holiday Season and the substantial harm that will result if the National Retailer cannot verify Plaintiff's authority.

16. Defendant has failed or refused to respond or provide the requested confirmation, even though doing so would not transfer ownership of the Snapo trademark or alter the economic terms of the Settlement and License Agreement. Defendant knows or has been informed that her refusal places Plaintiff's existing relationship with the National Retailer at immediate risk and may prevent Plaintiff from performing under that relationship and receiving anticipated orders.

17. On Friday, September 25, 2026, in a meeting where she was represented by her trademark Counsel, Michael Eddy, Esquire, Defendant agreed to provide the necessary brand registry code immediately upon being provided with certain product sales data. On Monday, September 28, 2026, the product sales data was provided to Defendant and her Counsel. The promised brand registry code, however, was not forthcoming.

18. On September 30, 2026, at Plaintiff's request, the National Retailer reissued a new request for brand registry verification code to Defendant's trademark counsel. Again, the brand registry code was not forwarded to Plaintiff. Instead, on October 2, 2026, Defendant sent an email to Plaintiff purporting to assert a breach of the Settlement and License Agreement and has continued to withhold the brand registry code without legal basis, placing the National Retailer relationship in immediate jeopardy.

19. Plaintiff has devoted substantial time and resources to the National Retailer Relationship, including production planning, tooling and capacity planning, inventory preparation, marketing, onboarding, and related commercial activities. The brand registry code is time-sensitive and was already overdue to the National Retailer when Plaintiff requested its production. Loss of the National Retailer Relationship would cause incalculable lost revenues and profits to both Plaintiff and Defendant, as well as stranded investments, loss of goodwill, loss of access to a national distribution channel, and potentially threaten the continued viability of Plaintiff's business.

20. Defendant's control of the official Snapo domain and digital accounts, combined with her refusal to confirm Plaintiff's licensed authority and forward the brand registry code, perpetuates uncertainty among commercial partners regarding who is authorized to speak for, manufacture, and supply the Snapo Brand. Forwarding the verification code would not transfer ownership of the SNAPO trademark, waive any royalty claim, or otherwise resolve the parties' underlying dispute. Plaintiff has provided Defendant written notice of her ongoing failures, requested cure and cooperation, and explained the resulting business harm. Defendant has not cured her conduct, and the threatened loss of the National Retailer Relationship, who's scale is unimaginable, presents immediate and irreparable harm which money damages would not adequately remedy.

21. In addition, Defendant's continuing conduct threatens separate and immediate injuries for which a later award of money damages will not provide an adequate remedy. The threatened injury is not limited to the dollar value of anticipated orders from the National Retailer. Loss of that relationship would deprive Plaintiff of access to a national retail and distribution channel, impair Plaintiff's credibility and reputation as the authorized exclusive licensee, damage

retailer and customer goodwill, and impair commercial relationships and opportunities that cannot presently be identified or valued with reasonable certainty. A later monetary judgment cannot restore Plaintiff to the National Retailer's distribution network, recreate lost market opportunities, or repair marketplace uncertainty regarding Plaintiff's authority as the exclusive licensee.

22. Defendant's continuing refusal to provide required access, the code, and reasonable confirmation of Plaintiff's licensed authority therefore creates a presently existing threat of irreparable harm that cannot adequately be remedied after final judgment.

23. In addition to withholding administrative access and refusing to confirm Plaintiff's authority, Defendant has failed and refused to fulfill her obligations concerning protection and maintenance of the Snapo Brand and associated goodwill despite repeated requests from Plaintiff for assistance. Plaintiff has notified Defendant on multiple occasions of third-party uses that Plaintiff believes infringe or otherwise impair the marks Snapo Brand and has requested Defendant's assistance in addressing those uses. Defendant has failed or refused to take action or otherwise provide the cooperation reasonably necessary for Plaintiff to protect the commercial value of the licensed brand.

24. When Plaintiff sought assistance concerning third-party infringement and unauthorized uses, counsel acting for Defendant advised that counsel represented Carol Sorensen, not Plaintiff as licensee, and declined to assist Plaintiff in protecting the licensed brand. Defendant nevertheless continued to retain control over the trademark rights and related enforcement decisions necessary to address those third-party uses, further impairing the commercial value and goodwill of the licensed Snapo Brand.

25. Access to the brand registry code, administrative access, and commercially reasonable confirmation of the licensed rights are central and necessary for Plaintiff to protect,

promote, sell, and expand supply and sales of Snapo products including through major online marketplace and the National Retailer.

26. The threatened injuries described above are ongoing and immediate, and a later award of money damages cannot restore lost retailer access, market position, goodwill, or confidence in Plaintiff's licensed authority once those relationships and opportunities are lost. This is especially true, given that the rights between the parties have been agreed upon and/or litigated on at least three separate occasions, as evidenced by (1) the Asset Purchase Agreement, (2) the Settlement and License Agreement, and (3) the Arbitration Award. Interim relief is therefore necessary to preserve the National Retailer Relationship while the parties' contractual dispute proceeds through the arbitration required by Section 28.

27. Accordingly, Plaintiff seeks a Preliminary Injunction preserving the status quo and preventing the National Retailer Relationship from being lost pending arbitration under Section 28, consistent with the parties Settlement and License Agreement and the prior Arbitration Award. More specifically, Plaintiff seeks a preliminary injunction requiring Defendant to promptly forward any current or future National Retailer brand registry verification codes received by Defendant, her counsel, or her agents, provide reasonable written confirmation of Plaintiff's exclusive licensee status to the National Retailer and other commercial partners, provide the required administrative access, reasonably cooperate in protecting and maintaining the licensed Snapo Brand, comply with the Settlement and License Agreement and arbitration awards, and refrain from interfering with or misrepresenting Snapo Toys' licensed rights and commercial relationships; Plaintiff does not seek through this Motion a final adjudication of the parties' royalty dispute or ownership of the SNAPO trademark.

28. The instant Motion and supporting Brief are being served on Ms. Sorensen to her known email address and to her counsel, Michael P. Eddy, Esquire.

WHEREFORE, Plaintiff, Snapo Toys, LLC, by and through its attorneys, Barley Snyder LLP, hereby respectfully requests that this Honorable Court grant the instant Motion and provide injunctive relief against Defendant as set forth in the attached proposed Order, and such other relief as may be deemed just and appropriate.

Respectfully submitted,

**BARLEY SNYDER LLP**



By: ______________________________

Kevin A. Moore, Esquire
Attorney I.D. No. 75068
Joseph Falcon, Esquire
Attorney I.D. No. 94658
Thad M. Gelsinger, Esquire
Attorney I.D. No. 208233
2755 Century Boulevard
Wyomissing, PA 19610
610-372-3500
kmoore@barley.com
jfalcon@barley.com
tgelsinger@barley.com
*Attorneys for Plaintiff*