IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SNAPO TOYS, LLC | : | |
| Plaintiff | : | Civil Action No. 5:26-cv-07419-JFL |
| | : | |
| v. | : | |
| | : | |
| CAROL SORENSEN | : | |
| Defendant | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Page(s)

I. FACTUAL BACKGROUND .... 1

A. Preliminary Injunction Request .... 1

B. Statement of Facts .... 1

II. STATEMENT OF THE QUESTION INVOLVED .... 6

III. SUMMARY OF ARGUMENT .... 6

IV. ARGUMENT .... 7

A. Standard for Preliminary Injunctive Relief .... 7

B. A Preliminary Injunction is Warranted .... 8

1. Likelihood of Success On The Merits .... 8

A) Asset Purchase Agreement .... 8

B) Settlement and License Agreement .... 9

C) Arbitration Award .... 10

2. Snapo Will Suffer Immediate Irreparable Harm .... 10

3. Defendant Will Not Be Irreparably Harmed if the Requested Injunction Is Issued .... 13

4. The Public Interest Favors Preserving the Parties' Agreed Rights and Arbitral Process .... 13

C. A Nominal Bond Is Appropriate .... 14

V. CONCLUSION .... 15

Table of Authorities

**Page(s)**

**Cases**

*Anash, Inc. v. Borough of Kingston*,
184 F.4th 214 (3d Cir. 2026) ....................7, 8

*Brookins v. Bonnell*,
362 F.Supp. 379 (E.D.Pa. 1973) ....................14

*Conn. General Life Ins. Co. v. New Images of Beverly Hills*,
321 F.3d 878 (9th Cir. 2003) ....................14

*Doctor's Assocs., Inc. v. Distajo*,
107 F.3d 126 (2d Cir. 1997)....................15

*Elliott v. Kiesewetter*,
98 F.3d 47, 60 (3d Cir. 1996) ....................14

*Erie Indem. Co. v. Stephenson*,
157 F.4th 265 (3d Cir. 2025) ....................7

*Highmark, Inc. v. UPMC Health Plan, Inc.*,
276 F.3d 160 (3d Cir. 2001)....................8

*Hope v. Warden York Cnty. Prison*,
972 F.3d 310 (3d Cir. 2020)....................8

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
882 F.2d 797 (3d Cir. 1989)....................10, 11, 12

*Kos Pharms., Inc. v. Andrx Corp.*,
369 F.3d 700 (3d Cir. 2004)....................11

*Northern Penna. Legal Services, Inc. v. Lackawanna County*,
513 F.Supp. 678 (M.D. Pa. 1981) ....................14

*Omicron Sys. Inc. v. Weiner*,
860 A.2d 554 (Pa. Super. Ct. 2004)....................8

*Ortho Pharm. Corp. v. Amgen, Inc.*,
882 F.2d 806 (3d Cir. 1989)....................8, 14

*Premier Dental Prods. Co. v. Darby Dental Supply Co.*,
794 F.2d 850 (3d Cir. 1986)....................11, 12

*Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*,

143 F.3d 800, 805 (3d Cir. 1998 ....................................................................................11

*Reilly v. City of Harrisburg*,
858 F.3d 173 (3d Cir. 2017).........................................................................................7

*Singer Mgmt. Consultants, Inc. v. Milgram*,
650 F.3d 223 (3d Cir. 2011).........................................................................................8

**Other Authorities**

Federal Rule of Civil Procedure 65 ...............................................................................1, 7, 14

11A Fed. Prac. & Proc. Civ. § 2954 (3d ed.) - Requirement of Security for the
Issuance of a Preliminary Injunction or Temporary Restraining Order .................................14

The Plaintiff, Snapo Toys, LLC ("Plaintiff" or "Snapo Toys"), by and through undersigned counsel, Barley Snyder LLP, respectfully submits this Memorandum of Law in support of its Motion for Preliminary Injunction ("Motion") against the Defendant, Carol Sorensen ("Defendant" or "Sorensen"), pursuant to Federal Rule of Civil Procedure 65.

## I. FACTUAL BACKGROUND

### A. Preliminary Injunction Request

This civil action, and more specifically, the attendant Motion for Preliminary Injunction, seeks the immediate use of this Court's equitable powers pursuant to F.R.C.P. 65 to compel Defendant to take certain required action, refrain from other unlawful conduct, and perform her contractual obligation in order to, inter alia, preserve Plaintiff's business relationship with a National Retailer[1], for the 2026 Holiday Season, as well as other business partners.

### B. Statement of Facts

This case begins with Vision Plastics Manufacturing ("Vision"), incorporated in California on May 22, 2012 by Soren Christian Sorensen, Defendant's late husband, for the purpose of manufacturing Snapo branded toy products. Mr. Sorensen granted to Vision an exclusive license for the use of patents and technologies which he owned. *See* Compl. Ex. A. § 8. Mr. Sorensen also granted Vision a license to use the SNAPO trademark under U.S. Trademark Registration No. 4,419,358. After Mr. Sorensen's death in 2017, Defendant inherited a 27.666% share interest in Vision and three other minority shareholders owned the remainder of Vision as follows: Robert Miller (17%), Stephen Rhodes (27.666%), and Jon Kemmer (27.666%).

[1] The term "National Retailer" is used in substitution for the true identity of said retailer who's scale and scope is not merely National, but worldwide, and the mere reference to said retailer in a publicly filed pleading could result in immediate termination of the business relationship. The identity of "National Retailer" will be disclosed subject to an appropriate Confidentiality Stipulation and Protective Order between the parties and to be submitted to this Court for approval prior to any evidentiary hearing where a record is made.

On or about February 22, 2019, Plaintiff and Vision executed an Asset Purchase Agreement ("Asset Purchase Agreement"). *See* Compl. Ex. B. The Asset Purchase Agreement identified equipment, inventory, customer and vendor lists, Snapo domain and social media assets, and "any and all know-how, technology and intellectual property relating to Snapo products, including all copyrights, trademarks and the goodwill associated therewith" among the assets to be conveyed to Plaintiff. Compl. Ex. B § 1. It further provided that agreements between Mr. Sorensen or Defendant and Vision would be transferred as part of the transaction. Compl. Ex. B § 2. The Asset Purchase Agreement also contemplated a royalty to Defendant in connection with Snapo sales.

In May 2019, Defendant initiated litigation in the Southern District of California, docketed at No. 19-cv-00738. The parties quickly resolved their dispute through a Settlement and License Agreement executed in June 2019 ("Settlement and License Agreement"). *See* Compl. Ex. C. Section 2 of the Settlement and License Agreement granted Plaintiff an exclusive worldwide license to develop, make, produce, market, sell, offer for sale, use, export, import, and distribute articles under the Snapo Brand. Compl. Ex. C. §§ 2-3. Section 37 separately requires Defendant to reasonably cooperate in facilitating delivery of Vision assets and to pay for and grant Plaintiff administrative access to: the snapo.com registration, website and email hosting, and specific social media accounts to the extent owned or controlled by Defendant. *See* Compl. Ex. C § 37.

The Settlement and License Agreement therefore independently defines Plaintiff's licensed rights and Defendant's continuing cooperation and access obligations. Defendant nevertheless retained control over the official Snapo domain, website, email infrastructure, and social media accounts and has not provided the administrative access required by Section 37.

Section 28 requires controversies or claims arising out of or relating to the Agreement, or its breach, to be resolved by binding arbitration in Pennsylvania under the American Arbitration Association's Commercial Arbitration Rules. See Compl. Ex. C § 28.[2] The narrow preliminary relief requested here is intended to prevent the National Retailer opportunity, as further explained below, from being lost before the parties' contractual dispute can be resolved through the agreed arbitration process.

Defendant later commenced arbitration against Plaintiff, asserting, among other things, breach of the Settlement and License Agreement. The matter proceeded to AAA Arbitration. On February 3, 2021, the arbitrator denied Defendant's breach of contract claim in its entirety and found that Defendant had failed to perform all of her obligations under the terms of the Settlement and License Agreement, frustrating Plaintiff's ability to comply with certain obligations ("Arbitration Award"). *See* Compl. Ex. D at p. 3.

Separately, the Arbitrator also found in favor of Plaintiff's claims for tortious interference with business relations and ordered, inter alia, the following relief: (1.) the parties shall comply with their respective obligations under the terms of the Settlement and License Agreement; (2.) ordered Defendant to provide Snapo Toys and Ms. Kennedy-Kline access to, and use of, the snapo.com domain, e-mail address, and linked accounts; (3.) ordered Defendant to facilitate Plaintiff's access to the high capacity molds and not interfere with the business relationships between Ms. Kennedy-Kline and Innovative Tool and Die.[3] *See* Compl. Ex. D at p. 4.

---

[2] That arbitration provision does not deprive this Court of authority to issue interim relief necessary to preserve the meaningfulness of arbitration. *Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 812-14 (3d Cir. 1989).

[3] Prior counsel attempted to confirm the arbitration awards in the United States District Court for the Eastern District of Pennsylvania, but those efforts were unsuccessful because Defendant has successfully evaded service of process in the U.S. and Cayman Islands, despite being represented by Counsel at all times.

Despite repeated notices and requests, Defendant continues to refuse to cooperate with Plaintiff as required by the Settlement and License Agreement, and addressed in the Arbitration Award by (1) denying Plaintiff full administrative access to the snapo.com domain, its website and email hosting, and the official social media and communications accounts associated with the Snapo Brand; (2) impairing Plaintiff's production, marketing, customer communications, retailer onboarding, and ability to respond to commercial opportunities, causing lost revenue, increased costs, lost goodwill, and other continuing damages; and (3) preventing Plaintiff from completing onboarding and brand verification for a material and potentially transformative, contractual relationship with a major national retailer (the "National Retailer") for the exclusive sale and distribution of Snapo branded products, from which Defendant stands to receive royalties ("National Retailer Relationship"). As part of the onboarding process, the National Retailer requires verification of Plaintiff's authority to manufacture, market, distribute, and sell Snapo branded products ("IP Rights") through its brand-registry process. The verification code is sent to the email address associated with the existing SNAPO registration, which Plaintiff does not control. Plaintiff therefore cannot complete the verification without Defendant's cooperation.

Plaintiff has requested that Defendant, as the Licensor of the IP Rights, provide or cooperate in providing that verification and has informed Defendant of the urgency and the substantial harm that will result if the National Retailer cannot verify Plaintiff's authority. Defendant has been specifically informed that the failure to provide the code places the National Retailer Relationship at immediate risk and may prevent Plaintiff from performing under that relationship and receiving anticipated orders. Knowing that Plaintiff requires her assistance to

proceed with the National Retailer Relationship, Defendant demanded information related to royalties she contends are unpaid and due to her.

Plaintiff produced the requested royalty calculations Defendant had requested and requested immediate forwarding of the verification code, which was already overdue to the National Retailer. The code was still not provided. Rather than abide by her obligations, Defendant has failed or refused to provide the requested verification even though forwarding the code would not transfer ownership of the SNAPO trademark, waive any royalty claim, or alter the economic terms of the Settlement and License Agreement.

To preserve the National Retailer Relationship, Plaintiff asked the National Retailer to reissue the verification request. On September 30, 2026, the National Retailer sent a new verification to Defendant's trademark counsel, Michael P. Eddy, Esquire. The code was not forwarded to Plaintiff. Instead, on October 2, 2026, Defendant sent a purported Notice of Breach under Section 12 of the Settlement and License Agreement and continued to withhold the code. Even if effective, that notice did not terminate the Agreement: Section 12 provides a ninety-day cure period followed by a fifteen-day good-faith meet-and-confer period before termination for an uncured breach. Compl. Ex. C § 12. Defendant's continuing withholding of the code thus creates a present commercial impediment while the license remains in force.

Plaintiff has devoted substantial time and resources to the National Retailer Relationship, including production planning, tooling and capacity planning, inventory preparation, marketing, onboarding, and related commercial activities. The verification code is time-sensitive and was already overdue when Plaintiff requested that it be forwarded. Defendant's control of the official Snapo registration and digital accounts, combined with the refusal to cooperate with brand verification creates uncertainty among commercial partners regarding Plaintiff's authority to

manufacture and supply Snapo branded products. Forwarding the verification code would preserve the existing licensed relationship without adjudicating trademark ownership of the Parties' royalty dispute. The threatened loss of the National Retailer Relationship therefore presents an immediate issue requiring interim relief.

The same pattern extends beyond the verification code. Section 8 requires Defendant to defend and maintain the SNAPO federal registration during the term of the Agreement, and Section 9 establishes a process for the parties to work together concerning suspected third-party infringement. Compl. Ex. C §§ 8-9. Plaintiff has repeatedly requested assistance concerning third-party uses that it believes impair the marks Snapo Brand. Defendant's continuing control of the trademark registration and related enforcement decisions, coupled with her refusal to provide the cooperation contemplated by the Agreement, further impairs the commercial value and goodwill of the licensed Snapo Brand.

## **II.** STATEMENT OF THE QUESTION INVOLVED

WHETHER PLAINTIFF HAS ESTABLISHED ENTITLEMENT TO INTERIM INJUNCTIVE RELIEF REQUIRING DEFENDANT TO PROVIDE THE TIME-SENSITIVE BRAND VERIFICATION COOPERATION AND ADMINISTRATIVE ACCESS NECESSARY TO PRESERVE PLAINTIFF'S EXISTING LICENSED RIGHTS AND NATIONAL RETAILER RELATIONSHIP PENDING ARBITRATION.

**Suggested Answer: Yes**

## **III. SUMMARY OF ARGUMENT**

Defendant has breached the Settlement and License Agreement and continues to violate obligations previously addressed in the Arbitration Award. The immediate dispute is now concrete: the National Retailer has sent a verification code to Defendant's trademark counsel that Plaintiff cannot access, and Plaintiff cannot complete the retailer's brand-verification process without Defendant's cooperation. The threatened injuries extend beyond lost orders to retailer

access, market position, goodwill, and confidence in Plaintiff's licensed authority. Interim relief is therefore necessary to preserve the National Retailer Relationship and the meaningfulness of the arbitration required by Section 28.

The requested relief is narrow. Plaintiff does not ask the Court to transfer ownership of the SNAPO trademark, resolve the parties' royalty dispute, or finally adjudicate the merits reserved for arbitration. It asks only that Defendant stop using retained control over the registration and related accounts to frustrate Plaintiff's existing exclusive license while the parties proceed through the agreed arbitral process. A later monetary award cannot recreate a lost national-retail channel, restore retailer confidence in Plaintiff as the authorized exclusive licensee, or reverse marketplace uncertainty after the opportunity has disappeared.

## IV. ARGUMENT

### A. Standard for Preliminary Injunctive Relief

Federal Rule of Civil Procedure 65 governs preliminary injunctive relief. A movant must establish: (1) a reasonable probability of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) that the balance of equities favors relief; and (4) that the public interest favors relief. *Erie Indem. Co. v. Stephenson*, 157 F.4th 265, 275 (3d Cir. 2025); see also *Anash, Inc. v. Borough* of *Kingston*, 184 F.4th 214 (3d Cir. 2026). The first two are gateway requirements; if they are satisfied, the Court weighs all four considerations in exercising its equitable discretion. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

Because portions of the requested relief require affirmative action, Plaintiff also recognizes the heightened standard applicable to a mandatory preliminary injunction. Such relief is reserved for the rare case in which the movant bears a "particularly heavy" burden, demonstrates a substantial likelihood of success on the merits, and shows an "indisputably clear" right to relief. *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020); see also

*Anash*, 184 F.4th 214. Plaintiff satisfies that heightened standard here because the requested relief does not create new substantive rights: it preserves the exclusive licenses already granted in Sections 2 and 3, the access obligations expressly imposed by Section 37, and the effectiveness of the arbitral process required by Section 28. See *Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 812-14 (3d Cir. 1989) (holding that a district court may grant interim injunctive relief in an arbitrable dispute when the traditional requirements are met and relief is necessary to preserve meaningful arbitration).

**B. A Preliminary Injunction is Warranted**

1. Likelihood of Success On The Merits

To demonstrate a likelihood of success on the merits, a "plaintiff need only prove a prima facie case, not a certainty that he or she will win." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001) (internal quotations and citation omitted). Under the ordinary preliminary-injunction threshold, a movant need not prove that ultimate success is more likely than not; likelihood means a "reasonable probability of success on the merits." *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (emphasis added). As set forth above, Plaintiff recognizes that the affirmative portions of the requested injunction are subject to the heightened mandatory-injunction standard.

Under Pennsylvania law, a breach-of-contract claim requires (1) the existence of a contract and its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages. *Omicron Sys. Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004). The Settlement and License Agreement and the Arbitration Award provide unusually concrete evidence of the parties' existing rights and obligations.

A) Asset Purchase Agreement

The February 2019 Asset Purchase Agreement between Vision and Plaintiff provides important background concerning the business assets Plaintiff acquired, including equipment, inventory, customer and vendor lists, Snapo domain and social-media assets, and intellectual property and goodwill associated with Snapo products. See Compl. Ex. B §§ 1-2.

Defendant was not a party to the Asset Purchase Agreement. Plaintiff therefore relies primarily on the Settlement and License Agreement, to which Defendant is a party, and the Arbitration Award as the contractual and adjudicative bases for the interim relief sought against Defendant.

B) Settlement and License Agreement

The Settlement and License Agreement directly defines the parties' operative rights. Section 2 grants Plaintiff an exclusive United States license under the Licensed Patents. Section 3 separately grants Plaintiff an exclusive worldwide Brand License Grant to develop, make, produce, market, sell, offer for sale, use, export, import, and distribute articles under the Snapo Brand. Compl. Ex. C §§ 2-3. Section 37 requires Defendant to reasonably cooperate and assist in facilitating delivery of Vision assets and to grant Plaintiff administrative access to the snapo.com registration, website and email hosting, and specified social-media accounts to the extent owned or controlled by Defendant. Compl. Ex. C § 37. These provisions establish a reasonable probability that Defendant may not retain practical control over the registration and related accounts in a manner that defeats Plaintiff's existing exclusive licensed rights.

Defendant has nevertheless retained practical control over the official Snapo registration and related digital accounts and has not provided the administrative access required by Section 37. The present verification dispute is a concrete consequence of that retained control:

the National Retailer sends the verification credential to an address associated with the registration, and Plaintiff cannot complete verification without Defendant's cooperation.

C) Arbitration Award

The Arbitration Award further supports Plaintiff's likelihood of success on obligations previously litigated between these parties. The arbitrator found that Defendant had failed to perform all of her obligations under the Settlement and License Agreement in a manner that frustrated Plaintiff's performance. *See* Compl. Ex. D at 3. The Award then ordered the parties to comply with their respective obligations under the Agreement and specifically required Defendant to provide Snapo Toys and Ms. Kennedy-Kline access to and use of the snapo.com domain, email address, and linked accounts, facilitate access to the high-capacity molds, and refrain from interfering with the relationship with Innovative Tool and Die. *See* Compl. Ex. D at 4.[4]

Plaintiff does not contend that the unconfirmed Award itself resolves every issue arising from Defendant's post-award conduct. It does, however, strongly corroborate Plaintiff's interpretation of the access and cooperation obligations that remain central here. The present withholding of the National Retailer verification code is a new, time-sensitive manifestation of the same practical problem: Defendant's retained control is being used to prevent Plaintiff from exercising the commercial benefit of an exclusive license that remains in force.

2. Snapo Will Suffer Immediate Irreparable Harm

Irreparable harm must be immediate and incapable of adequate redress through a later legal remedy. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).

[4]The Arbitration Award was not confirmed as a federal judgment because service was not perfected in the prior confirmation proceeding. Plaintiff relies on the Award here as evidentiary support concerning obligations actually adjudicated between the parties, not as a presently enforceable federal judgment resolving Defendant's post-award conduct.

Loss of control over reputation, trade, and goodwill may constitute irreparable injury. *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004) (quoting *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998)).

*Instant Air Freight* also demonstrates why the evidentiary showing matters. There, the Third Circuit reversed an injunction notwithstanding the threatened loss of a customer responsible for approximately eighty percent of the plaintiff's business because the record did not establish that the business would be destroyed and the claimed loss was susceptible to calculation. See *Instant Air Freight Co.* at 801-02. Plaintiff therefore does not rely here merely on the projected dollar value of National Retailer orders.

The threatened injury here includes loss of access to a national retail channel, loss of credibility as the authorized exclusive licensee, and injury to the goodwill associated with Plaintiff as the authorized commercial source of Snapo products. Those are injuries that cannot necessarily be recreated by a damages award. See *Premier Dental Prods. Co. v. Darby Dental Supply Co.*, 794 F.2d 850, 859 (3d Cir. 1986) (recognizing irreparable injury to goodwill associated with an exclusive domestic source).

The relevant inquiry is therefore whether the current record shows an imminent threat to those noncompensable interests, not whether future National Retailer sales can be assigned a speculative dollar value.

The current record presents that immediate threat. Plaintiff holds an exclusive Brand License Grant, yet the National Retailer's verification process sends the credential to an address outside Plaintiff's control. Defendant and her counsel have been informed of the problem, and a newly issued code sent on September 30, 2026 was not forwarded. Without the verification step, Plaintiff cannot presently complete the retailer's brand-verification process.

Defendant's obstruction of the National Retailer Relationship is therefore particularly urgent. Plaintiff has informed Defendant of the commercial consequences, produced the royalty calculations Defendant requested, and caused the National Retailer to reissue the verification request. The requested relief would not transfer the SNAPO registration, waive any royalty claim, or decide the merits reserved for arbitration. It would preserve Plaintiff's ability to complete an existing retailer onboarding process before the opportunity is lost.

The harm is not limited to calculable lost orders. If the National Retailer opportunity is lost because Plaintiff cannot establish its authority to sell under the licensed brand, a later damages award cannot necessarily restore Plaintiff to that retailer's distribution channel, recreate the timing of the market opportunity, or repair the resulting uncertainty regarding Plaintiff's authority as the exclusive licensee. Those effects on retailer access, commercial credibility, and goodwill are distinct from the readily calculable contract losses found insufficient in *Instant Air Freight*.

The same concern is amplified by Defendant's continuing control over the official Snapo domain and digital accounts. Plaintiff's inability to independently administer those assets or complete third-party brand verification communicates to commercial partners that the exclusive licensee may not be able to act for the brand without intervention from the licensor. That practical impairment of an exclusive source relationship is closely analogous to the goodwill concern recognized in *Premier Dental.* 794 F.2d at 859.

Separate from the National Retailer verification issue, Sections 8 and 9 of the Settlement and License Agreement impose trademark-maintenance and cooperation obligations. Section 8 requires Defendant to defend and maintain the SNAPO registration during the term, and Section 9 provides a process for cooperation concerning suspected third-party infringement.

Compl. Ex. C §§ 8-9. Plaintiff's evidence of repeated requests for assistance further supports the ongoing nature of the impairment to the licensed brand.

Accordingly, the threatened injury is present and time sensitive. A later award can compensate some lost sales, but it cannot reliably restore a lost national retail opportunity, undo marketplace uncertainty regarding Plaintiff's authority, or recreate goodwill and commercial relationships once impaired. Plaintiff therefore satisfies the irreparable-harm gateway requirement.

3. Defendant Will Not Be Irreparably Harmed if the Requested Injunction Is Issued

The requested relief imposes little cognizable hardship on Defendant. Forwarding a retailer verification code, providing the administrative access expressly required by Section 37, and accurately confirming Plaintiff's existing license status do not transfer ownership of the SNAPO trademark, waive Defendant's royalty claims, or determine the ultimate merits of the parties' dispute. To the contrary, sales of Licensed Products may generate a royalty equal to five percent (5%) of Net Receipts under Section 5. Compl. Ex. C § 5.

The hardship to Plaintiff from denial is materially greater: the National Retailer onboarding process remains blocked by a credential Plaintiff cannot obtain on its own, while the commercial opportunity is time sensitive. Narrow relief preserving the existing licensed relationship therefore places substantially less risk on Defendant than denial places on Plaintiff.

4. The Public Interest Favors Preserving the Parties' Agreed Rights and Arbitral Process

The public interest favors enforcement of valid contractual and arbitration arrangements while preserving the ability of the agreed dispute-resolution process to provide meaningful relief.

See *Ortho Pharm. Corp.*, 882 F.2d at 813-14. The requested injunction serves that interest by preserving the existing exclusive license and National Retailer opportunity without adjudicating ownership of the SNAPO mark or the parties' royalty dispute. No countervailing public interest favors allowing a time-sensitive commercial opportunity to be lost while the merits proceed to arbitration.

### C. A Nominal Bond Is Appropriate

Plaintiff requests that the bond be set at zero because there is effectively no cost to Defendant in performing the obligations it has already agreed to and/or ordered to perform. Further, Defendant stands to gain from the injunction as she will realize royalties in the amount of 5% of all revenue generated by Plaintiff. It is widely accepted that the court may dispense with security altogether if the grant of an injunction carries no risk of monetary loss to the defendant. *See Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d Cir. 1996) (exception to bond requirement "involves a balance of the equities of the potential hardships that each party would suffer as a result of a preliminary injunction. Where the balance of these equities weighs overwhelmingly in favor of the party seeking the injunction, a district court has the discretion to waive the Fed. R. Civ. P. 65(c) bond requirement."); *see also* § 2954 Requirement of Security for the Issuance of a Preliminary Injunction or Temporary Restraining Order, 11A Fed. Prac. & Proc. Civ. § 2954 (3d ed.), n. 13; *Northern Penna. Legal Services, Inc. v. Lackawanna County*, 513 F.Supp. 678, 685-86 (M.D. Pa. 1981)(requiring nominal bond of $100); *Brookins v. Bonnell*, 362 F.Supp. 379, 380-384 (E.D.Pa. 1973) (no bond required); *see also Conn. General Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (A "district court is afforded wide discretion in setting the amount of a bond, and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction.") (internal citations omitted); *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) (district court did

not abuse discretion by issuing preliminary injunctions without requiring moving party to post bonds where there was "no proof of likelihood of harm" to the party enjoined).

## V. CONCLUSION

For the forgoing reasons, Plaintiff respectfully requests that the Court grant the Motion and enter narrowly tailored preliminary injunction requiring Defendant to:

a. Within twenty-four (24) hours after receiving actual notice of this Order, forward to Plaintiff any current National Retailer brand-registry verification code for SNAPO received by Defendant, her counsel, or her agents, and thereafter promptly forward any replacement or renewed code received while this Order remains in effect;

b. Upon reasonable request from the National Retailer or another identified commercial partner, Defendant shall provide written confirmation that Plaintiff is Defendant's exclusive licensee and an authorized manufacturer, marketer, distributor, and seller of licensed SNAPO-branded products under the Settlement and License Agreement, without prejudice to Defendant's ownership of the SNAPO trademark or any preserved royalty claim;

c. Provide Plaintiff the administrative access to snapo.com, associated website and email hosting, and official Snapo Brand social-media accounts required by Paragraph 37 of the Settlement and License Agreement, to the extent those assets are owned or controlled by Defendant;

d. Reasonably cooperate in protecting and maintaining the licensed Snapo Brand, including cooperation reasonably necessary to complete the National Retailer's brand-verification and onboarding process; and

e. Refrain from interfering with or making statements inconsistent with Plaintiff's existing licensed authority or Plaintiff's National Retailer onboarding and other commercial relationships.

Plaintiff does not seek through this Motion a final adjudication of the parties' royalty dispute or ownership of the SNAPO trademark.

Respectfully submitted,

**BARLEY SNYDER LLP**

By: ______________________________

Kevin A. Moore, Esquire
Attorney I.D. No. 75068
Joseph Falcon, Esquire
Attorney I.D. No. 94658
Thad M. Gelsinger, Esquire
Attorney I.D. No. 208233
2755 Century Boulevard
Wyomissing, PA 19610
610-372-3500
kmoore@barley.com
jfalcon@barley.com
tgelsinger@barley.com
*Attorneys for Plaintiff*