**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SNAPO TOYS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CAROL SORENSEN,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No. 5:26-cv-07419-JFL |

**DECLARATION OF CAROL SORENSEN IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I, Carol Sorensen, declare under penalty of perjury under 28 U.S.C. § 1746 as follows:

1. I am the Defendant in this action. I live in the Cayman Islands. I am a citizen of the Cayman Islands, a British Overseas Territory, and of South Africa. I am not a citizen of the United States. I make this declaration from personal knowledge.

2. I own the SNAPO trademark and U.S. Trademark Registration No. 4,419,358, the patents and technology for SNAPO interlocking toy building elements, and the snapo.com domain, as the Settlement and License Agreement effective June 17, 2019 (the "Agreement") recites. I have owned the snapo.com domain at all times since the Agreement was signed. I have never agreed to transfer it to Snapo Toys, LLC ("Snapo") or to Tara Kennedy-Kline, and nothing in the Agreement or in the 2021 arbitration awards requires me to.

3. Administrative access. In 2019 I gave Snapo's web manager, Pamela Gockley, access to my Cloudflare account, which she accepted on July 19, 2019, and administrator ("delegate") access to my GoDaddy account, where the domain is registered, which she accepted on September 3, 2019. Later that day Ms. Gockley wrote that Snapo wanted the domain transferred into its own GoDaddy account instead and asked me to remove her delegate access. I removed it as she asked, told her and Ms. Kennedy-Kline so on September 8, 2019, and sent new delegate-access invitations for the snapo.com domain to Ms. Gockley and to Snapo's email addresses, as I confirmed to Ms. Kennedy-Kline on September 15, 2019; they had not been accepted when I wrote to her again on September 25, 2019. On September 24, 2019 I changed the email address on the Cloudflare

account that manages the DNS for snapo.com to Snapo's own address, snapo.toys@gmail.com, and I have had no access to that account since; on March 24, 2021 the consultant I had engaged, Netclues, confirmed that the DNS records sat in a Cloudflare account to which neither it nor I had access. Access in 2019 and 2020 was decided in the Partial Final Award of February 3, 2021, and I do not re-argue it here. On March 18, 2021 Ms. Kennedy-Kline accepted delegate access to my GoDaddy account, where the snapo.com domain is held, and I confirmed on November 4, 2026 that her access remains in place. On March 22, 2021 I confirmed in writing to Ms. Gockley and Ms. Kennedy-Kline that Snapo had full control of the SiteGround email hosting account, the Cloudflare DNS account and the Shopify e-commerce account, and I introduced Netclues to help Ms. Gockley with the email records she had asked about that morning. The request I declined, on March 25, 2021, was Ms. Gockley's request that I transfer ownership of the domain to Snapo's own GoDaddy account; Snapo's counsel repeated that request on September 25, 2026, and my counsel declined it. Since March 22, 2021 I have not refused any request from Snapo for access to any account. On November 4, 2026 I confirmed that a visitor to www.snapo.com is redirected to Snapo's website at snapo-toys.com, a domain I do not own; I did not set up that redirection and, as stated above, I have had no access to the account that manages the DNS for snapo.com since September 24, 2019. I will make any change to the domain's nameservers at GoDaddy that Snapo requests in writing.

4. Social media accounts. I do not hold credentials for any Twitter, Pinterest, Instagram, YouTube or Facebook account associated with the Snapo Brand or for any Grasshopper telephone service. Since the Agreement was signed, the only such credentials I have held were for the Instagram and Twitter accounts. On June 27, 2019 Ms. Kennedy-Kline gave me by text message the email address, snapo.toys@gmail.com, and the mobile telephone number to be used for the social media accounts. Early on June 28, 2019 (Cayman time) I myself changed the email address and telephone number on the Snapo Instagram account from mine to those she had given me; Instagram's notices, timed 11:08 p.m. Pacific time on June 27, 2019, record the change. At 2:10 a.m. that morning I emailed the Instagram and Twitter logins to Ms. Kennedy-Kline and her team, and that afternoon she texted me, "All set with the social media." I have held no such credentials

since. As to LinkedIn: in September 2013, long before the Agreement, I let a Vision Plastics colleague use the login of my personal LinkedIn account so that she could set up a Snapo company page, which LinkedIn then allowed only through a personal profile. I do not use LinkedIn, I have never operated any Snapo page on it, and I am no longer able to sign in to that personal account, which I believe has been closed. I will sign any authorization a platform requires to confirm Snapo's authority as my licensee.

5. Royalties. Snapo has delivered no Royalty Report and paid no Royalty to me for any quarter after the fourth quarter of 2022. In no quarter in which the Royalty Snapo reported was below the minimum quarterly royalty threshold in Section 6 of the Agreement has Snapo paid up the difference. The $9,526.40 that Ms. Kennedy-Kline stated on February 14, 2023 was due to me has not been paid; I asked for it on February 14, March 2 and March 17, 2023. The one-page table of annual totals that Snapo's counsel sent on September 28, 2026 is not a Royalty Report and attached no records. On October 1, 2026 I signed a Notice of Breach under Section 12 of the Agreement, which was sent to Ms. Kennedy-Kline and to Snapo's counsel by email that night (Cayman time) and by FedEx on October 2, 2026.

6. The retailer verification code. In December 2025 I authorized my counsel to provide the retailer's verification codes to Snapo, and he did so on December 11 and December 20, 2025. On September 15, 2026 I asked, with Snapo's counsel copied, that the royalty and reporting issues be resolved before anything further was provided. On September 30, 2026 I authorized my counsel to release the code the retailer had issued that day and to confirm Snapo's license in writing, without waiting for the reports, records or payment I was owed, and he did so. I will forward to Snapo, within one business day after my counsel receives it, any further verification code the retailer sends to my counsel for the SNAPO registration, and I will confirm Snapo's license in writing to any other retailer Snapo identifies.

7. Brand protection. I renewed Registration No. 4,419,358 in 2024 and it is in force. In December 2021 and January 2022 Ms. Kennedy-Kline raised with me several businesses using names she considered too close to Snapo; we discussed them on January 4, 2022, and on January 6

and January 17, 2022 she wrote to me that her own counsel would send letters to them and had not yet been able to do so; no draft letter was ever sent to me. When Ms. Kennedy-Kline reported a suspected infringing product on September 2, 2022, my counsel at the time, Lawrence Maxham, asked her the same day for the identity of the seller and a sample of the product; she replied, "As our IP attorney, I will toss that into your court," and provided neither. On November 30, 2022 Ms. Kennedy-Kline emailed me, Mr. Maxham and Snapo's counsel images of listings on another retailer's website that she said came up under the name Snapo and asked whether I or Mr. Maxham would pursue it. On December 5, 2022 Mr. Maxham replied to her by letter, copied to me, that under Section 9 of the Agreement I waived my right to enforce against that use and that Snapo, as licensee, could pursue it. So far as I know, Snapo did not pursue it, and it did not raise that listing with me again before this action. I have offered, through my counsel's letter of September 30, 2026, to support enforcement against infringers under Section 9 of the Agreement on the terms that section provides, and Snapo has not identified any infringer to me since.

8. Molds. I do not have mold drawings for the Snapo molds, as I told Snapo in writing on April 14, 2022. So far as I know, the toolmaker that built the molds, Innovative Tool & Die, Inc., holds the mold designs and drawings for the molds it built, and through my counsel's letter of September 30, 2026 I have offered to authorize it to release to Snapo's toolmaker any drawings or files it holds. The two 16 mm axle molds that I paid Innovative Tool & Die, Inc. in full to complete (deposit March 11, 2022; balance December 16, 2022) were shipped by it to Snapo's facility at Reading, Pennsylvania, marked "Property of Carol Sorensen," and on February 14, 2023 Ms. Kennedy-Kline wrote to me: "I have received the 2 molds from Frank and Jack has just put them in and tested them." Since the Partial Final Award of February 3, 2021 I have not instructed Innovative Tool & Die, Inc. not to communicate with Snapo. Ms. Kennedy-Kline corresponded with it directly about the molds, copying me, on April 8 and April 13, 2022, and on February 16, 2022 I told her I would ask Mr. Klomp to email her directly to arrange delivery; she replied, "Have Frank get in touch with me so we can arrange shipping."

9. I have not received any communication from the retailer about Snapo's registration other than the verification notices sent to my counsel as correspondent of record for my registration.

10. I have no office, employees or bank account in Pennsylvania, and I conduct no business there. The only property of mine that I know to be in Pennsylvania is the Sorensen Molds identified in Section 14 of the Agreement, which Snapo has the exclusive right to use during the Term, including the two axle molds described in paragraph 8. I signed the Agreement in the Cayman Islands. I have never traveled to Pennsylvania in connection with the Agreement or the 2019 to 2021 arbitration, and to the best of my recollection I have never been to Pennsylvania; the hearings in that arbitration were held by Zoom video conference.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November [4th], 2026 at 5:47pm, Cayman Islands.

Carol Sorensen

Carol Sorensen